[Crim. No. 2443. In Bank.—May 16, 1922.]

## In re Y. AKADO, etc., for a Writ of Habeas Corpus.

[1] ALIENS—ACQUISITION OF AGRICULTURAL LAND — NATIVE-BORN SUB-JECT OF JAPAN—INITIATIVE ALIEN LAND ACT OF 1920.—Under sections 1 and 2 of the initiative alien land law of 1920, which in effect declares that no alien who is not eligible to citizenship under the laws of the United States may acquire real property, except as provided by the treaty existing between the United States and the country of which such alien is a citizen or subject, and the treaty between the United States and Japan providing that citizens of Japan residing in the United States may lease land for residential and commercial purposes, but containing no provision authorizing an alien of the Japanese race to lease or acquire land for agricultural purposes, a native-born subject of Japan cannot acquire agricultural land in this state.

[2] INITIATIVE ALIEN LAND ACT—CONSPIRACY TO EFFECT TRANSFER TO INELIGIBLE ALIEN—VALIDITY OF SECTION.—The fact that no provision of the initiative alien land law of 1920 makes it a crime or public offense for any person to transfer land to an alien ineligible to citizenship does not affect the validity of section 10, which declares it to be a crime for two or more persons to conspire to bring about such a transfer, since the act positively forbids the acquisition of such land by an alien.

[3] ID.—PURPOSE OF SECTION 10 OF ACT.—The purpose of section 10 of the Initiative Alien Land Act of 1920, which makes it a crime for two or more persons to conspire to bring about a transfer of land to an ineligible alien, was to prevent any attempts to create relations between such aliens and other persons whereby the title to land would be taken by any other person and the use thereof would be enjoyed by the alien.

[4] ID.—ACQUISITION OF LANDS BY INELIGIBLE ALIENS—CONSTITUTIONAL LAW—POWER OF LEGISLATURE.—The power to forbid the taking or holding of property within the limits of the state by aliens ineligible to citizenship is left to the legislature by section 17 of article I of the constitution, and since the Initiative Alien Land Act of 1920 makes it unlawful for such aliens to acquire agricultural land in this state there, is also power to make it a crime to conspire to bring about such acquisition.

APPLICATION for a Writ of Habeas Corpus to secure release from custody for a violation of the alien land law.

The facts are stated in the opinion of the court.

Algernon Crofton, Charles A. Wetmore, Jr., J. C. Meyerstein and Gillogley, Grofton & Payne for Petitioner.

G. W. Hoyle, Ross Campbell, U. S. Webb, Attorney-General, and Frank English, Deputy Attorney-General, for Respondent.

SHAW, C. J.—The petitioner is in custody upon a warrant of arrest issued upon an indictment charging him with a violation of section 10 of the act adopted by initiative at the November election of 1920, forbidding the acquisition of agricultural lands in this state by any alien who is not eligible to become a citizen of the United States. Claiming that section 10 of the act is invalid and that the indictment states no public offense, he seeks release by a writ of *habeas corpus*.

Section 1 of the act provides that all aliens eligible to citizenship under the laws of the United States may acquire real property in the same manner as citizens of the United States.

Section 2 provides that all aliens other than those mentioned in section 1 may acquire, possess, enjoy, and transfer real property ''in the manner and to the extent and for the purpose prescribed by any treaty now existing between the government of the United States and the nation or country of which such alien is a citizen or subject, and not otherwise.''

[1] This, in effect, declares that no alien who is not eligible to citizenship under the laws of the United States may acquire real property, except as provided by the treaty existing between the United States and the country of which such alien is a citizen or subject. (37 Stat. 1504.) Persons of the Japanese race who are native-born subjects of Japan cannot become citizens of the United States. The result is that the acquisition by such an alien of land situated in this state is unlawful, unless the treaty between his government and the United States allows such acquisition. The treaty between the United States and Japan provides that citizens of Japan residing in the United States may lease land for residential and commercial purposes, but it contains no provision authorizing an alien of the Japanese race to lease or acquire land for agricultural purposes.

Consequently the initiative alien law aforesaid prohibits the acquisition by such alien of any agricultural land situated in this state.

Section 10 of the act is as follows: "If two or more persons conspire to effect a transfer of real property, or of an interest therein, in violation of the provisions hereof, they are punishable by imprisonment in the county jail or state penitentiary not exceeding two years, or by a fine not exceeding five thousand dollars, or both."

The indictment charges that on September 19, 1921, in Sonoma County, California, the petitioner and one W. A. Cockrill did "willfully, unlawfully, and feloniously, conspire together to effect a transfer of agricultural and farming real estate, land and property, in the County of Sonoma, State of California, and an interest therein, and did so willfully, unlawfully, and feloniously take and enter into an agreement to purchase certain agricultural and farming real estate, land and property, from Bartholomeu C. Souza and Mary C. Souza in the name of said defendant, W. A. Cockrill, for the use, benefit, enjoyment, possession, occupation and control of said Y. Akado, also known as S. Ikada, and paid thereon, on the purchase price thereof, the sum of one hundred and fifty dollars," which said money was paid by said Akado, who was then and there an alien subject of Japan and not eligible to citizenship in the United States, and that said land was and is not acquired in the enforcement or satisfaction of any lien thereon, and said agreement to purchase the same was taken in the name of Cockrill for the use of Akado, with the intent and purpose to prevent, evade, and avoid the escheating of said land to the state of California, said Cockrill not having then and there any interest in said lands in fee or otherwise.

It is clear that the indictment charges an agreement between the two persons charged, which, if it were valid and if it were carried out, would effect a transfer of land in violation of the provisions of the Alien Land Act. Such an agreement would be a conspiracy and would be a violation of section 10 aforesaid.

[2] The petitioner contends that because of the fact that no provision of the alien land law makes it a crime or public offense for any person to transfer land to an alien ineligible to citizenship, that therefore, for some reason, the

cogency of which we are not able to perceive, the section declaring it to be a crime for two or more persons to conspire to bring about such a transfer is ineffective for any purpose. This result would not follow. The act forbids such transfer and this makes it impossible for any person to convey land to an alien ineligible to citizenship by any transfer that would be valid as against the state of California, although it might be valid with respect to all other persons. We must assume that the people in adopting this statute believed that the state of California could protect itself against the alien who had received a conveyance of such land whenever its officers became advised of the fact, without any provision making the execution of the conveyance itself a crime. But it is entirely reasonable to suppose that in many cases the state might not obtain information of such fact. Furthermore, it is to the interest of the state that all persons owning land should be effectively deterred from attempting to evade or frustrate the provisions of the act forbidding the acquisition of such land by such alien, by means of colorable conveyances and unrecorded trusts. It was therefore reasonable and proper to provide that the attempt to make such transfer, or an agreement or conspiracy to do so, should be punishable as a crime, regardless of the question whether the transfer would be valid or effective if the intention of such persons were actually carried to the point of execution by a conveyance. We can perceive nothing in the conditions which would make such penal statute ineffective. The acquisition of such land by an alien ineligible to citizenship is positively forbidden by the act. It is immaterial that such acquisition is not made a punishable offense. The framers of the act deemed it a sufficient protection to the state to make it a public offense for any person to conspire to effect such a transfer. The fact that the act creates no other crime does not affect the validity of the section which defines the offense charged against the petitioner.

[3] For like reasons it is immaterial whether the arrangement between Akado and Cockrill that the price should be paid by Akado and that the title should be taken by Cockrill would operate to create a valid trust in Cockrill in favor of Akado with respect to the land and the use thereof, or not. The purpose of the section was to prevent

any attempts to create relations between such aliens and other persons whereby the title to land would be taken by any other person and the use thereof would be enjoyed by the alien. Such purpose is sufficient to uphold the penal statute, and the fact that the trust could not be enforced is not material to the effectiveness of the provision forbidding a conspiracy to make a formal attempt to create such invalid trust.

[4] It is not claimed that the Alien Land Act is contrary to the state or federal constitution, in respect to the provision forbidding the acquisition of agricultural land. It is well settled that, in the absence of a treaty to the contrary, a state may forbid the taking or holding of property within their limits by aliens. (*Blythe* v. *Hinckley,* 127 Cal. 436 [59 Pac. 781].) Our constitution leaves to the legislature this power with regard to all aliens ineligible to citizenship. (Art. I, sec. 17.) The provisions of the act in terms allow such aliens to take and hold agricultural land to the extent that such taking or holding is prescribed by any treaty with the country of which such alien is subject. The treaty with Japan does not prescribe or secure to its citizens the right to take or hold agricultural land situated in this state. Hence the act does not violate the treaty in that respect. In the recent case of *Estate of Yano, ante,* p. 645 [206 Pac. 995], the court held that the provision of the law preventing the appointment of such aliens as guardians of their minor children born in this country was not a violation of the treaty, but that it was discriminative and therefore violative of the constitutions of this state and of the United States. That case is not at all inconsistent with the case at bar. There the child was born here and is a citizen of this country, with the same right to take and hold property that any other citizen possesses. Here the persons forbidden to take and hold property are aliens who have not become citizens and who are ineligible to become such. Since the statute makes it unlawful for such aliens to acquire agricultural land within this state, it is clear that there is also power to make it a crime to conspire to bring about such acquisition.

We are therefore of the opinion that section 10 of the act declares a public offense which may be enforced by our

courts and that the indictment sufficiently states the offense described in that section.

The petition for a writ of *habeas corpus* is denied.

Sloane, J., Wilbur, J., Shurtleff, J., Lennon, J., and Richards, J., *pro tem.*, concurred.

LAWLOR, J., Concurring.—I concur, but adhere to the views I expressed in *Estate of Yano, ante,* p. 645, as to the constitutionality of the provision of the alien land law relating to guardianship.