## PORTERFIELD ET AL. v. WEBB, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 28. Argued April 23, 24, 1923.—Decided November 12, 1923.

1. The treaty of February 21, 1911, 37 Stat. 1504, between the United States and Japan, does not confer upon Japanese subjects the privilege of acquiring or leasing land for agricultural purposes. P. 232. *Terrace* v. *Thompson, ante,* 197.

2. The California Alien Land Law, by permitting aliens eligible to citizenship under the laws of the United States to acquire, possess, enjoy and transfer real property in the State, while permitting other aliens to exercise these rights only as prescribed by existing treaty between the United States and their respective countries, does not violate the equal protection clause of the Fourteenth Amendment, as applied to ineligible aliens who have not such rights by treaty, or to citizens desirous of letting their land to such aliens. P. 232. *Terrace* v. *Thompson, ante,* 197.

279 Fed. 114, affirmed.

APPEAL from an order of the District Court denying a motion for a temporary injunction, in a suit brought by appellants to enjoin appellees from enforcing the California Alien Land Law.

*Mr. Louis Marshall* for appellants.

I. We may freely concede that, in conformity with the common law, it was within the power of California to confine the ownership of land, or of an interest therein, to citizens. Far from asserting this power, it has in its Civil Code affirmatively recognized the right of all aliens to acquire real property, and by the Acts of 1913 and 1920 has recognized the right of one class of aliens without restriction of any kind to own any interest whatsoever in California lands, and has at the same time forbidden another class to acquire any interest at all in realty except as permitted by treaty. This, we earnestly contend,

denies to the latter that equal protection of the laws guaranteed by the Fourteenth Amendment " to any per-. son within the jurisdiction of the State."

.What § 1 of the Act of 1920 confers upon some aliens, is by § 2 denied to others, solely because in one case the aliens are white or black and in the other they are red, yellow or brown. It is not made dependent upon character, morals, economic position, intellectual or physical capacity, ability to increase the wealth of the State or the value of its taxable property, or a willingness to serve the State. It is merely the result of arbitrary selection, and as between aliens coming from fifty different lands those from forty are given the unqualified and unconditional right to acquire real property or an interest in it, while those coming from ten other countries are absolutely prohibited, under the penalty of escheat, imprisonment and fine, from taking even a lease for a single year of realty devoted to uses other than for residential or commercial purposes. Can this be said to constitute the equal protection of the laws? *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Truax* v. *Raich,* 239 U. S. 33; *Ex parte Kotta,* 62 Cal. Dec. 315; *Ex parte Terui,* 187 Cal. 20; *Estate of Yano,* 188 Cal. 645.

Immediately after the adoption of the Fourteenth Amendment in various of the States, and especially in California, laws were enacted directed against the Chinese inhabitants of those States, the constitutionality of which was passed upon in the federal courts, and in which the Fourteenth Amendment became the rock of refuge. *Ho Ah Kow* v. *Nunan,* 5 Sawy. 552; *Re Tiburcio Parrott,* 1 Fed. 481; *Re Ah Chong,* 2 Fed. 733; *Opinion of Justices,* 207 Mass. 601.

See also: *Re Ah Fong,* 3 Sawy. 144; *Laundry Ordinance Case,* 13 Fed. 229; *Gandolfo* v. *Herman,* 49 Fed. 181; *Re Ty Loy,* 26 Fed. 611; *Re Sam Kee,* 31 Fed. 681; *Re Lee Sing,* 43 Fed. 359; *Ex parte Sing Lee,* 96 Cal. 354; *Ex*

*parte Case,* 20 Idaho, 128; *Poon* v. *Miller,* 234 S. W. 573. Distinguishing, *Heim* v. *McCall,* 239 U. S. 175; *Crane* v. *New York,* 239 U. S. 195.

Other alien cases to be noted are: *Fraser* v. *McConway & Torley Co.,* 82 Fed. 257; *Juniata Limestone Co.* v. *Fagley,* 187 Pa. St. 193; *State* v. *Montgomery,* 94 Me. 192; *Templar* v. *Board,* 131 Mich. 254; *Vietti* v. *Mackie Fuel Co.,* 109 Kans. 179.

Cases affecting negroes under the equality clause: *Slaughter-House Cases,* 16 Wall. 36; *Buchanan* v. *Warley,* 245 U. S. 60; *Ex parte Virginia,* 100 U. S. 339; *Neal* v. *Delaware,* 103 U. S. 370; *Gibson* v. *Mississippi,* 162 U. S. 565; *Williams* v. *Mississippi,* 170 U. S. 213; *Carter* v. *Texas,* 177 U. S. 442; *Rogers* v. *Alabama,* 192 U. S. 226; *Martin* v. *Texas,* 200 U. S. 316; *Kentucky* v. *Powers,* 201 U. S. 1, 32; *McCabe* v. *Atchison, Topeka & S. F. Ry. Co.,* 235 U. S. 151.

Other decisions under the equality clause: *Railroad Tax Cases,* 13 Fed. 722; *Santa Clara County* v. *Southern Pacific R. R. Co.,* 18 Fed. 385; 118 U. S. 394; *Gulf, Colorado & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150; *Atchison, Topeka & S. F. Ry. Co.* v. *Vosburg,* 238 U. S. 56; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Raymond* v. *Chicago Union Traction Co.,* 207 U. S. 20; *Smith* v. *Texas,* 233 U. S. 630; *Gast Realty Co.* v. *Schneider Granite Co.,* 240 U. S. 55; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412; *Kansas City Southern Ry. Co.* v. *Road Improvement District,* 256 U. S. 658; *State* v. *Julow,* 129 Mo. 163.

II. The act is likewise unconstitutional because it deprives Porterfield, who is a citizen of the United States, of the right to enter into contracts for the leasing of his realty, and because it deprives Mizuno of his liberty and property by debarring him from entering into a contract for the purpose of earning a livelihood in a lawful occupation. *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Truax* v.

*Raich,* 239 U. S. 33; *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 746; *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Smith* v. *Texas,* 233 U. S. 630; *Coppage* v. *Kansas,* 236 U. S. 1.

*Mr. U. S. Webb,* Attorney General of the State of California, with whom *Mr. Frank English,* Deputy Attorney General, *Mr. Thomas Lee Woolwine* and *Mr. Tracy C. Becker* were on the brief, for appellees.

I. The Alien Land Law of California does not violate the Fourteenth Amendment.

The State has the fundamental right to prohibit alien ownership, possession, dominion over or enjoyment of land. The Fourteenth Amendment was never intended to affect this right.

It is obvious that the due process of law required by the Fourteenth Amendment has no application to the subject matter here.

If there exists a reason for dividing people into two classes as (1) citizens, and (2) aliens, in respect of a particular subject matter of legislation, it is also competent to apply to those classes different legislative treatment. If there exists an equally good reason for again dividing either of these divisions into classes, it is equally competent to apply to those classes different legislative treatment.

The classification adopted in the California Alien Land Act is (1) aliens eligible to citizenship, and (2) aliens not eligible to citizenship. The first class owes allegiance to the State and to the Nation. Experience of more than a century has shown that large numbers from the first class do assume the burdens, duties and responsibilities of citizenship, severing their allegiance from the old and swearing allegiance to their new government. The second class, irrespective of their desires, can never become citizens of this government or free themselves from the

obligations and allegiance to their own government. They can never become the support and dependence of this nation but remain the support, maintenance and dependence of their own government.   They are and must continue to be aliens unassimilated and unassimilable and in full harmony, sympathy and accord with their own government when the call to arms comes.   They are, and must by reason of their allegiance remain, not only aliens within our borders, but enemies when the nations are in conflict.   This is valid classification. *Perley* v. *North Carolina,* 249 U. S. 510; *Moody* v. *Hagen,* 36 N. D. 47; *Truax* v. *Corrigan,* 257 U. S. 312; *Terrace* v. *Thompson,* 274 Fed. 841, and cases there cited.

The modern application of the common law rule, dating back to the time of the Year Books, that the only title which an alien could acquire to real property was a title subject to defeasance by the sovereign, could not be better expressed than it is by the court in the *Terrace Case, supra.*

Secretary of State Bryan, in his diplomatic correspondence with the Japanese Ambassador, following the enactment of the earlier California Alien Land Law of 1913, expressed the necessity for the fundamental doctrine of a nation's control of its land tenure in convincing language.   Papers Relating to the Foreign Relations of the United States, 1913, Department of State, p. 641.

The fundamental question is not one of race discrimination.   It is a question of recognizing the obvious fact that the American farm, with its historical associations of cultivation and environment, including the home life of its occupants, cannot exist in competition with a farm developed by Orientals with their totally different standards and ideas of cultivation of the soil, of living and social conditions.

The conservative and intelligent statesmen of Japan have recognized this truth just as fully as have those of America.

Rights to land ownership and to citizenship in any country must depend on the judgment ·of the statesmen of that country. These are problems which throughout the years of international relationships between governments have been settled by each nation for itself.

That the State may prohibit alien ownership of land, see *Tanner* v. *Staeheli*, 112 Wash. 344. See also *Frick* v. *Webb*, 281 Fed. 407; *In re Akado*, 188 Cal. 739.

An alien may inherit land or take by law only by grace of the State within the boundaries of which the lands are situate. *In re Colbert's Estate*, 44 Mont. 259.

[Counsel then drew comparisons of the act with the Washington statute upheld in *Terrace* v. *Thompson*, *ante*, 197, and with alien land legislation in other States and countries.]

II. Sections 1977 and 2164, U. S. Rev. Stats., are not violated by the California Alien Land Law.

III. The California Law does not violate the treaty with Japan. This is evident from an examination of the treaty and the diplomatic negotiations preceding its approval.

An historical analysis of the several treaties between Japan and the United States also· shows that leasehold interests have always been restricted to· lands devoted solely to trade and commerce.

Foreigners have no right to own or lease lands for agricultural purposes under the law of Japan.

IV. The plaintiff alien is not "carrying on trade, wholesale and retail," or leasing land for "commercial purposes" within the scope of the treaty with Japan. Just as the manufacture of sugar and of intoxicating liquors to be thereafter transported in interstate commerce is not a part of such commerce within the provision of the commerce clause of the Constitution, so by the same reasoning the pursuit of a farmer in raising agricultural products is not the pursuit of commerce within the terms.

of our treaty with Japan. *Terrace* v. *Thompson,* 274 Fed. 841; *Kidd* v. *Pearson,* 128 U. S. 1; *United States* v. *Knight Co.,* 156 U. S. 1; *Hopkins* v. *United States,* 171 U. S. 578; *Capital City Co.* v. *Ohio,* 183 U. S. 238.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Appellants brought this suit to enjoin the above named Attorney General and District Attorney from enforcing the California Alien Land Law, submitted by the initiative and approved by the electors, November 2, 1920. [Stats. 1921, p. lxxxiii.]

Appellants are residents of California. Porterfield is a citizen of the United States and of California. Mizuno was born in Japan of Japanese parents and is a subject of the Emperor of Japan. Porterfield is the owner of a farm in Los Angeles County containing 80 acres of land, which is particularly adapted to raising vegetables, and which for some years has been devoted to that and other agricultural purposes. The complaint alleges that Mizuno is a capable farmer and a desirable person to become a tenant of the land, and that Porterfield desires to lease the land to him for a term of five years, and that he desires to accept the lease, and that the lease would be made but for the act complained of. And it is alleged that the appellees, as Attorney General and District Attorney, have threatened to enforce the act against the appellants if they enter into such lease, and will forfeit, or attempt to forfeit, the leasehold interest to the State and will prosecute the appellants criminally for violation of the act. It is further alleged that the act is so drastic and the penalties attached to a violation of it are so great that neither of the appellants may make the lease even for the purpose of testing the constitutionality of the act, and that, unless the court shall determine its validity in this suit, appellants will be compelled to submit to it, whether valid or invalid, and thereby will be deprived of

their property without due process of law and denied equal protection of the laws.

Appellants made a motion for a temporary injunction to restrain appellees, during the pendency of the suit, from bringing or permitting to be brought any proceeding for the purpose of enforcing the act against the appellants. This was heard by three judges as provided in § 266 of the Judicial Code. The motion was denied.

The act provides in §§ 1 and 2 as follows:

" Section 1. All aliens eligible to citizenship under the laws of the United States may acquire, possess, enjoy, transmit and inherit real property, or any interest therein, in this state, in the same manner and to the same extent as citizens of the United States, except as otherwise provided by the laws of this state.

" Sec. 2. All aliens other than those mentioned in section one of this act may acquire, possess, enjoy and transfer real property, or any interest therein, in this state, in the manner and to the extent and for the purpose prescribed by any treaty now existing between the government of the United States and the nation or country of which such alien is a citizen or subject, and not otherwise."

Other sections provide penalties by escheat and imprisonment for violation of § 2.

The treaty between the United States and Japan (37 Stat. 1504–1509) does not confer upon Japanese subjects the privilege of acquiring or leasing land for agricultural purposes. Terrace v. Thompson, ante, 197.

Appellants contend that the law denies to ineligible aliens equal protection of the laws secured by the Fourteenth Amendment, because it forbids them to lease land in the State although the right to do so is conferred upon all other aliens. They also contend that the act is unconstitutional because it deprives Porterfield of the right to enter into contracts for the leasing of his realty, and

deprives Mizuno of his liberty and property by debarring him from entering into a contract for the purpose of earning a livelihood in a lawful occupation.

This case is similar to *Terrace* v. *Thompson,. supra.* In that case the grounds upon which the Washington Alien Land Law was attacked included those on which the California act is assailed in this case. There the prohibited class was made up of aliens who had not in good faith declared intention to become citizens. The class necessarily includes all ineligible aliens and in addition thereto all eligible aliens who have failed so to declare. In the case now before us the prohibited. class includes ineligible aliens only. In the matter of classification, the States have wide discretion. Each has its own problems, depending on circumstances existing there. It is not always practical or desirable that legislation shall be the same in different States. We cannot say that the failure of the California Legislature to extend the prohibited class so as to include eligible aliens who have failed to declare their intention to become citizens of the United States was arbitrary or unreasonable. See *Miller* v. *Wilson,* 236 U. S. 373, 383, 384, and cases cited.

Our decision in *Terrace* v. *Thompson, supra,* controls the decision of all questions raised here.

> *The order of the District Court is affirmed.*

MR. JUSTICE McREYNOLDS and MR. JUSTICE BRANDEIS think there is no justiciable question involved and that the case should have been dismissed on that ground.

MR. JUSTICE SUTHERLAND took no part in the consideration or decision of this case.