# WEBB, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, ET AL. *v.* O'BRIEN ET AL.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 26. Argued April 23, 24, 1923.—Decided November 19, 1923.

1. A citizen can have no legal right to enter into a contract involving land with an alien who cannot legally make and carry out the contract. P. 321.
2. In the absence of a treaty to the contrary, a State has power to deny aliens the right to own land within its borders. P. 322.
3. A cropping contract between an owner of land in California and a Japanese alien, which, though it may not amount to a lease or a transfer of an interest in real property, is more than a contract of employment in that it gives the alien a right to use, and have a share in the benefit of, the land for agricultural purposes, exceeds the privileges granted to such aliens by Art. I of the treaty of February 21, 1911, 37 Stat. 1504, between the United States and Japan, and is forbidden by the California Alien Land Law, which denies to aliens ineligible to citizenship permission to have or enjoy any privilege, not prescribed in the treaty, in respect to the use or the benefit of land for agricultural purposes. P. 322.
4. In forbidding such contracts, the state law violates no right of the landowner or the alien under the Federal Constitution. P. 324. See *Terrace* v. *Thompson, ante,* 197; *Porterfield* v. *Webb, ante,* 225. *Truax* v. *Raich,* 239 U. S. 33, distinguished.

279 Fed. 117, reversed.

APPEAL from a decree of the District Court granting an interlocutory injunction, in a suit to enjoin state officials from instituting proceedings to enforce the California Alien Land Law.

*Mr. U. S. Webb,* Attorney General of the State of California, with whom *Mr. Frank English,* Deputy Attorney General, and *Mr. C. C. Coolidge* were on the brief, for appellants.

I. The law of landlord and tenant, and the distinction drawn by the courts between the title of a lessee and the

mere right to compensation of a cropper, have developed in consideration of the mutual rights of the parties to these agreements and the rights of third parties other than the State.

II. The State of California is not concerned with the rights that the law of real property may or may not give to such a cropper to assign the growing crop. The State is interested in preventing such a cropper, if he be an alien ineligible to citizenship, actually enjoying the possession and dominion of the land.

Here we should have practical dominion of the soil by this particular ineligible alien. His interests would demand that he cultivate the soil according to his own theories and impose thereon such living environments as would be most conducive to his own advantage, just as he would if he owned the land.

The influence, standard of living, agricultural ideas and economic theories of this alien would prevail. The knowledge of husbandry gained from this experience would redound to the benefit of this alien. In the case of regular " employment," the theories of the owner of the land would prevail and such an owner would be the gainer by reason of this experience.

One important reason for the rule that we find in some States, that a cropper has no interest in the land, is to protect the owner of the land from the results that would follow, as a matter of law, if the arrangement were considered a lease, and complete title to the crop thus vested in the cropper as a lessee up to the time of the division of the crop. *Guest* v. *Opdyke*, 31 N. J. L. 552; *Caswell* v. *Districh*, 15 Wend. 379.

Other cases hold against the theory of a lease, so as to vest sufficient title to the crop in the owner of the land, to permit of the owner joining as a plaintiff in actions brought to protect the crop. None of the results that should be avoided need happen in California if in this

case it is determined that the cropper has such an interest in the land as to violate the California Alien Land Act. See *Johnson* v. *Hoffman,* 53 Mo. 504.

III. The rule established by the California Supreme Court, on cropping contracts, is that the landowner and the cropper may be tenants in common of the crop and at the same time the cropper may have an interest in the land. This is a different rule than that which exists in some other jurisdictions. *Bernal* v. *Hovious,* 17 Cal. 541; *Walls* v. *Preston,* 25 Cal. 60; *Knox* v. *Marshall,* 19 Cal. 617; *Smith* v. *Schultz,* 89 Cal. 526; and see *Moulton* v. *Robinson,* 27 N. H. 550; *Warner* v. *Abbey,* 112 Mass. 355; *Ferris* v. *Hoglan,* 121 Ala. 240; *Dixon* v. *Niccolls,* 39 Ill. 372; *McNeal* v. *Rider,* 79 Minn. 153; *Strangeway* v. *Eisenman,* 68 Minn. 395.

*Mr. Louis Marshall* for appellees.

I. The cropping contract, the execution of which the appellants contend would subject the parties to punishment by imprisonment or fine, or both, and would immediately result in an escheat of the land to which it relates to the State of California, does not come within the terms of the act, because it does not effect a transfer of real property or of an interest therein.

This statute does not undertake to prohibit any aliens from entering into a contract for the performance of labor upon agricultural lands within the State of California. Had it attempted to do so, the effort would have been nugatory, because it would clearly offend against the provision of the Fourteenth Amendment which guarantees them against deprivation of their liberty and property without due process of law. *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Truax* v. *Raich,* 239 U. S. 33; *Whitfield* v. *Hanges,* 222 Fed. 745; § 1977, U. S. Rev. Stats.

In order to give the statute of 1920 any constitutional effect whatever (which we have contended, in the *Porter-*

*field Case,* [*ante,* 225,] cannot be done,) it must relate
to the acquisition of the title of real property or of an
interest therein. That is the only reasonable significance
that can attach to the language of §§ 1, 2, and 3, and is
emphasized by other parts of the act.

The contract here does not constitute a transfer of real
property. It is in its essence a contract of employment.
It contains not a single word or phrase essential to the
creation of a lease. It does not convey or transfer any
land to Inouye; it does not provide for the payment by
him of any rent. It does not give to him the general
possession of the land, but, on the contrary, the general
possession is reserved to O'Brien, the owner. It does not
confer upon him the ownership of the crops growing on
the land. It does not even provide that he shall give to
the owner any part of the crops produced. On the con-
trary, O'Brien, the owner, is to compensate Inouye for
his labor and services, by giving to him one-half of the
crops grown on the land, and in order to avoid any pos-
sibility of a misinterpretation the instrument merely per-
mits Inouye to work the land and provides that he shall
have no interest or estate whatsoever in it. There is not
a word which would justify an inference that the contract
was anything else than a contract for personal services
rendered by Inouye. Nor does it by its terms inure to or
bind his personal representatives or assigns. From the
beginning to the end of the document the relation be-
tween the parties as that of employer and employee is
meticulously maintained.

To sustain the appellants' contention would involve the
escheat of O'Brien's property—a forfeiture—and the im-
prisonment or fine, or both fine and imprisonment, of both
O'Brien and Inouye, under the penal provisions of the
act. The law abhors a forfeiture.

Statutes in derogation of common-law rights, *Meister*
v. *Moore,* 96 U. S. 79; *Shaw* v. *Railroad Co.,* 101 U. S.

565; *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Thompson* v. *Thompson*, 218 U. S. 618; and all statutes of a penal nature, whether civil or criminal, must be construed strictly in favor of those whom they affect, irrespective of whether the penalty is forfeiture of property, fine, or imprisonment.

If the acts alleged do not come clearly within the prohibition of the statute, its scope will not be extended to include other offenses than those which are clearly prescribed and provided for; and if there is a fair doubt as to whether the act charged is embraced in the prohibition, that doubt is to be resolved in favor of the defendant.

Whatever differences may have existed at an earlier period as to the effect of cropping contracts, the law is now well settled, and unless the provisions of the agreement clearly indicate an intent to create a leasehold or to confer an interest in land on which the work is to be done, the relation between the owner of the property and the person cultivating the land is regarded as that of employer and employee. 1 Washburn, Real Property, 5th ed., p. 604; 2 Reeves, Real Property, § 564; Jones, Landlord and Tenant, § 49; Warvelle, Ejectment, § 26; McAdam, Landlord and Tenant, 4th ed., § 45; 17 Corpus Juris, p. 382; *Caswell* v. *Districh*, 15 Wend. 378; *Putnam* v. *Wise*, 1 Hill, 234; *Bernal* v. *Hovious*, 17 Cal. 541; *Walls* v. *Preston*, 25 Cal. 59; *Clarke* v. *Cobb*, 121 Cal. 595; *Taylor* v. *Bradley*, 39 N. Y. 129; *Unglish* v. *Marvin*, 128 N. Y. 380; *Reynolds* v. *Reynolds*, 48 Hun, 142; *Vaughn* v. *DeWandler*, 63 How. Pr. 380; *Booher* v. *Stewart*, 75 Hun, 214; *Estate of Ellis*, 78 Misc. 589; *Stall* v. *Wilbur*, 77 N. Y. 158; *Sexton* v. *Breese*, 135 N. Y. 391; *Crosby* v. *Woleben*, 149 App. Div. 338; *Wiggins Ferry Co.* v. *Ohio & Mississippi Ry. Co.*, 142 U. S. 396; *Taylor* v. *Donahoe*, 125 Wis. 513; *Guest* v. *Opdyke*, 31 N. J. L. 552; *State* v. *Jewell*, 34 N. J. L. 259; *State* v. *Reynolds*, 67 N. J. L. 169; and many other cases. Distinguishing, *Smith* v. *Schultz*,

89 Cal. 526; *Dixon* v. *Niccolls,* 39 Ill. 372; *Ferris* v. *Hoglan,* 121 Ala. 240; *Strangeway* v. *Eisenman,* 68 Minn. 395; and *McNeal* v. *Rider,* 79 Minn. 153.

It is well settled that a cropper may not maintain trespass or ejectment for a wrongful entry upon the premises on which he carries on his work. *Bradish* v. *Schenck* 8 Johns. 151; *Hare* v. *Celey,* Cro. Eliz. 143; *Decker* v. *Decker,* 17 Hun, 14; *Taylor* v. *Bradley,* 39 N. Y. 12.

II. There is no merit in the suggestion that the act under consideration in any manner effected a change in the principles controlling a cropper's contract and its legal effect, so as to convert it into a lease and a transfer of an interest in land, and thus make it the basis of a forfeiture and a criminal prosecution.

If the State of California had regarded such a contract as an evil, it would have been a very simple matter to have used appropriate language in the statute to forbid a landowner or an alien from entering into such a contract.

A failure to express what it would have been easy to say is significant and frequently decisive. *United States* v. *Chase,* 135 U. S. 259; *National Bank* v. *Matthews,* 98 U. S. 627; *Tompkins* v. *Fort Smith Ry.,* 125 U. S. 127; *Tillson* v. *United States,* 100 U. S. 46; *Railroad Co.* v. *Grant,* 98 U. S. 403; *United States* v. *First Natl. Bank,* 234 U. S. 262.

The fact that the authorities are at one in declaring that such an agreement as that in the case at bar is one of employment, and does not confer an interest in land, shows beyond a doubt that there is nothing in this statute which amounts to an exercise by the State of that dominion which appellants are seeking to ascribe to it.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This is a suit brought by the appellees to enjoin the Attorney General of California and the District Attorney

of Santa Clara County from instituting any proceedings
to enforce the California Alien Land Law [1] against them.

O'Brien is a citizen and resident of California, and owns
ten acres of agricultural land in the county of Santa Clara.

---

[1] Initiative Measure adopted November 2, 1920. Statutes 1921,
p. lxxxiii.

Section 1. All aliens eligible to citizenship under the laws of the
United States may acquire, possess, enjoy, transmit, and inherit real
property, or any interest therein, in this state, in the same manner
and to the same extent as citizens of the United States, except as
otherwise provided by the laws of this state.

Section 2. All aliens other than those mentioned in section one of
this act may acquire, possess, enjoy and transfer real property, or
any interest therein, in this state, in the manner and to the extent
and for the purpose prescribed by any treaty now existing between
the government of the United States and the nation or country of
which such alien is a citizen or subject, and not otherwise.

Section 3 provides that any company, association or corporation
a majority of whose members are ineligible aliens or in which a
majority of the issued capital stock is owned by such aliens is per-
mitted to acquire, possess, enjoy and convey real property or any
interest therein, in the manner and to the extent and for the purposes
prescribed by any treaty, etc. Hereafter, ineligible aliens may become
members of or acquire shares of stock in any company, association or
corporation that is or may be authorized to acquire, possess, enjoy or
convey agricultural land, in the manner and to the extent and for the
purposes prescribed by any treaty . . . and not otherwise.

Section 4 provides that no ineligible alien and no company, asso-
ciation or corporation mentioned in § 3 may be appointed guardian
of that portion of the estate of a minor which consists of property
which such alien or such company, association or corporation is
inhibited from acquiring, possessing, enjoying or transferring by
reason of the provisions of the act. The superior court may remove
the guardian of such an estate whenever it appears to the satisfaction
of the court that facts exist which would make the guardian ineligible
to appointment in the first instance.

Section 5(a). The term "trustee" as used in this section means
any person, company, association or corporation that as guardian,
trustee, attorney-in-fact or agent, or in any other capacity has the
title, custody or control of property, or some interest therein, belong-
ing to an ineligible alien or to the minor child of such an alien, if the

Inouye is a capable farmer, and is a Japanese subject living in California. O'Brien and Inouye desire to enter into a cropping contract covering the planting, cultivating

property is of such a character that such alien is inhibited from acquiring, possessing, enjoying or transferring it.

(b). Annually every such trustee must file a verified written report showing: . . . (3) An itemized account of all expenditures, investments, rents, issues and profits in respect to the administration and control of such property with particular reference to holdings of corporate stock and leases, cropping contracts and other agreements in respect to land and the handling or sale of products thereof is required of such trustee.

Section 6 provides for sale and distribution of proceeds when, by reason of the provisions of the act, any heir cannot take real property or membership or shares of stock in a company, association or corporation.

Section 7 provides for the escheat of property acquired in fee by any ineligible alien and that no alien, company, association or corporation mentioned in § 2 or § 3 hereof shall hold for a longer period than two years, the possession of any agricultural land acquired in the enforcement of or in satisfaction of a mortgage or other lien hereafter made or acquired in good faith to secure a debt.

Section 8. Any leasehold or other interest in real property less than a fee, hereafter acquired in violation of the provisions of this act by any ineligible alien or by any company, association or corporation mentioned in section 3 of this act, shall escheat to the State of California. . . . . Any share of stock or interest of any member in a company, association or corporation hereafter acquired in violation of the provisions of section 3 of this act shall escheat to the State of California.

Section 9. Every transfer of real property, or of an interest therein, though colorable in form, shall be void as to the state and the interest thereby conveyed or sought to be conveyed shall escheat to the state if the property interest involved is of such a character that an ineligible alien is inhibited from acquiring, possessing, enjoying or transferring it, and if the conveyance is made with intent to prevent, evade or avoid escheat as provided for herein.

Section 10. If two or more persons conspire to effect a transfer of real property, or of an interest therein, in violation of the provisions hereof, they are punishable by imprisonment in the county jail or state penitentiary not exceeding two years, or by a fine not exceeding five thousand dollars, or both.

and harvesting of crops to be grown on the land. They allege that the execution of such a contract is necessary in order that the owner may receive the largest return from the land, and that the alien may receive compensation therefrom; that the Attorney General and District Attorney have threatened to and will enforce the act against them if they execute the contract, and will forfeit or attempt to forfeit the land by an escheat proceeding, and will prosecute them criminally for violating the act. They aver that the act is so drastic, and the penalties for its violation are so great, that neither of them may execute the contract even for the purpose of testing its validity and its application thereto; and that, unless the court shall determine the validity of the act and its application, they will be compelled to submit to it, whether valid or invalid, and to the appellants' interpretation of it, and so be deprived of their property without due process of law and denied the equal protection of the laws in contravention of the Fourteenth Amendment.

Appellees applied for an interlocutory injunction. The matter was heard by three judges, as provided in § 266 of the Judicial Code. The injunction was granted, and the Attorney General and District Attorney appealed.

O'Brien, who is a citizen, has no legal right to enter into the proposed contract with Inouye, who is an ineligible Japanese alien, unless the latter is permitted by law to make and carry out such a contract. At common law, aliens, though not permitted to take land by operation of law, may take by the act of the parties; but they have no capacity to hold against the State, and the land so taken may be escheated to the State. See *Fairfax's Devisee* v. *Hunter's Lessee,* 7 Cranch, 603, 609, 619, 620; *Governeur's Heirs* v. *Robertson,* 11 Wheat. 332, 355; *Phillips* v. *Moore,* 100 U. S. 208, 212; *Atlantic & Pacific R. R. Co.* v. *Mingus,* 165 U. S. 413, 431. In the absence of

a treaty to the contrary, the State has power to deny to aliens the right to own land within its borders. *Terrace* v. *Thompson, ante,* 197; *Hauenstein* v. *Lynham,* 100 U. S. 483, 484, 488; *Blythe* v. *Hinckley,* 127 Cal.. 431, affirmed 180 U. S. 333, 340; *Ex parte Okahara,* 216 Pac. 614. The provision of the act which limits the privilege of ineligible aliens to acquire real property or any interest therein to that prescribed by treaty is not in conflict with the Fourteenth Amendment. *Terrace* v. *Thompson, supra; Porterfield* v. *Webb, ante,* 225; *Ex parte Okahara, supra.* The treaty between the United States and Japan (37 Stat. 1504–1509) does not confer upon the citizens or subjects of either in the territories of the other the right to acquire, possess or enjoy lands for agricultural purposes. *Terrace* v. *Thompson, supra; Ex parte Okahara, supra.*

By the proposed cropping contract, Inouye is given the right for a term of four years to plant, cultivate and harvest crops—berries and vegetables—on the land, and to be free from interference by the owner, who undertakes to protect him during the term against interference by any other person. He is entitled to housing for himself, and is granted the right to employ others to work on the land, and to give to them free ingress and egress and the right to live on the land. He is entitled to one-half of all crops grown on the land during the term, to be divided after they are harvested and before removal from the land, and is given a reasonable time after the expiration of the term to remove his share of the crops. He is required to accept his share of the crops as reimbursement for expenditures made to carry on the farming operations, and as his only return from the undertaking. Assuming that the proposed arrangement does not amount to a leasing or to a transfer of an interest in real property, and that it includes the elements of a contract of employment (*Ex parte Okahara, supra*), we are of opinion that it is more than a contract of employment; and that, if executed, it will give to

Inouye a right to use and to have or share in the benefit of the land for agricultural purposes. And this is so, notwithstanding other clauses of the contract to the effect that the general possession of the land is reserved to the owner, that the cropper shall have no interest or estate whatever in the land, that he is given one-half of all crops grown as compensation for his services and labor, and that division of the crops is to be made after they are harvested and before their removal from the land.

The treaty grants liberty to own or lease and occupy houses, manufactories, warehouses and shops, and to lease land for residential and commercial purposes.[2] Section 2 of the act extends the privilege to acquire, possess, enjoy and transfer real property or any interest therein only in the manner and to the extent and for the purposes prescribed in the treaty. The treaty gives no permission to enjoy, use or have the benefit of land for agricultural purposes. The privileges granted by the act are carefully limited to those prescribed in the treaty. The act as a whole evidences legislative intention that ineligible aliens shall not be permitted to have or enjoy any privilege in respect of the use or the benefit of land for agricultural purposes. And this view is supported by the circumstances and negotiations leading up to the making of the treaty. See Terrace v. Thompson, supra; Same v. Same, 274 Fed. 841, 844, 845. As applied to this case, the act may be read thus: " Ineligible aliens may own or lease houses, manufactories; warehouses and shops, and may lease land for residential and commercial purposes. These

[2]Article I. The citizens or subjects of each of the High Contracting Parties shall have liberty to enter, travel and reside in the territories of the other to carry on trade, wholesale and retail, to own or lease and occupy houses, manufactories, warehouses and shops, to employ agents of their choice, to lease land for residential and commercial purposes, and generally to do anything incident to or necessary for trade upon the same terms as native citizens or subjects, submitting themselves to the laws and regulations there established.

things, but no possession or enjoyment of land otherwise, are permitted."

The term of the proposed contract, the measure of control and dominion over the land which is necessarily involved in the performance of such a contract, the cropper's right to have housing for himself and to have his employees live on the land, and his obligation to accept one-half the crops as his only return for tilling the land clearly distinguish the arrangement from one of mere employment. The case differs from *Truax* v. *Raich*, 239 U. S. 33. In that case, a statute of Arizona making it a criminal offense for an employer of more than five workers, regardless of kind or class of work or sex of workers, to employ less than eighty per cent. native born citizens of the United States was held to infringe the right, secured by the Fourteenth Amendment, of a resident alien to work in a common occupation—cooking in a restaurant. The right to make and carry out cropper contracts such as that before us is not safeguarded to ineligible aliens by the Constitution. A denial of it does not deny the ordinary means of earning a livelihood or the right to work for a living. The practical result of such contract is that the cropper has use, control and benefit of land for agricultural purposes substantially similar to that granted to a lessee. Conceivably, by the use of such contracts, the population living on and cultivating the farmlands might come to be made up largely of ineligible aliens. The allegiance of the farmers to the State directly affects its strength and safety. *Terrace* v. *Thompson, supra*. We think it within the power of the State to deny to ineligible aliens the privilege so to use agricultural lands within its borders.

The decision of the Supreme Court of California in *Ex parte Okahara, supra*, a *habeas corpus* case, does not support the appellees' contention. In that case an ineligible Japanese was held on a warrant charging him with conspiracy to effect a transfer of real property in violation

of § 10 of the Alien Land Law. The gravamen of the offense charged was that Okahara, in furtherance of the conspiracy, executed a contract with another, whereby the latter transferred to him for a term of five years an interest in 20 acres of agricultural land. The only question before the court in that case was whether the contract amounted to a transfer of real property or of an interest therein in violation of § 10. The court said: ". . . the instrument before us cannot be characterized as a lease or transfer of any interest in real property because it lacks many of the essential elements of a lease, while on the other hand it bears all the characteristics of an agreement of hiring. But if it cannot be said to be an agreement of employment pure and simple, it cannot under any rule. of construction be held to be more than a cropping contract." After referring to the terms of the contract and reviewing authorities, it said: " The argument that the law forbids the making of a contract of employment or agreement to till the soil on shares can only be sustained by adopting the theory that the particular agreement under consideration transfers an interest in land." The court held that the contract did not violate § 10 and discharged Okahara. The contract in that case differs in important particulars from the one before us; but in the view we take of this case, we need not determine whether, within the meaning of the act, the contract between O'Brien and Inouye, if executed, would effect a transfer of an interest in real property. The question in this case is not whether the proposed contract is prohibited by § 10, but it is whether appellees have shown that they have a right under the Constitution or treaty to make and carry out the contract, and are entitled to an interlocutory injunction against the officers of the State. A negative answer must be given.

The privilege to make and carry out the proposed cropping contract, or to have the right to the possession, en-

ᴊᴏʏᴍᴇᴀᴛ and benefit of land for agricultural purposes as contemplated and provided for therein, is not given to Japanese subjects by the treaty. The act denies the privilege because not given by the treaty. No constitutional right of the alien is infringed. It therefore follows that the injunction should have been denied.

*The order appealed from is reversed.*

Mʀ. Jᴜsᴛɪᴄᴇ McRᴇʏɴᴏʟᴅs and Mʀ. Jᴜsᴛɪᴄᴇ Bʀᴀɴᴅᴇɪs think there is no justiciable question involved and that the case should have been dismissed on that ground.

Mʀ. Jᴜsᴛɪᴄᴇ Sᴜᴛʜᴇʀʟᴀɴᴅ took no part in the consideration or decision of this case.