[S. F. No. 17108. In Bank. May 22, 1945.]

CELESTINO ALFAFARA, Respondent, v. BERNICE
FROSS, Appellant.

Winston Churchill Black for Appellant.

Pillsbury, Madison & Sutro, Sigvald Nielson and Charles F.
Prael for Respondent.

SHENK, J.—The plaintiff, a native Filipino, sought spe-
cific performance of a contract of sale of real property in
which he was named as the purchaser and the defendant as

the seller. After a hearing on stipulated facts, the trial court entered a decree in favor of the plaintiff. Defendant appealed. The question for decision is whether, under the Alien Land Act (Stats. 1921, p. lxxxiii, adopted as an initiative measure, Deering's Gen. Laws, Act 261, as amended), the plaintiff is barred from acquiring real property in this state.

Plaintiff was born on May 19, 1899, in the Philippine Islands, of parents who were likewise born there. He is a pure Filipino of the Filipino race and is therefore not a white person. He resided in the islands until 1929 when he came to the United States and he has since resided in San Francisco. He is not a citizen of the United States, and has never served in the United States Army, Navy, Marine Corp, Coast Guard, or any of the armed forces of the United States. He has never resided in any country other than the Philippine Islands and the United States.

In June, 1944, plaintiff entered into a contract for the purchase from defendant for the sum of $65 of a parcel of land located in San Mateo County. When the purchase price was tendered pursuant to the terms of the contract defendant refused to convey. This action followed. Defendant asserted that performance by her would be contrary to the provisions of the Alien Land Act and unlawful. In refusing to uphold this defense, the trial court concluded that "plaintiff is a national of the United States of America and is not an alien and is not barred or prohibited from holding or receiving real property in the State of California by the Alien Property Initiative Act of 1920."

On the stipulated facts the plaintiff is entitled to acquire the real property and the judgment in his favor should be affirmed unless he is excluded from its acquisition by the Alien Land Act. That act provides (§§ 1, 2): "All aliens eligible to citizenship under the laws of the United States may acquire, possess, enjoy, use, cultivate, occupy, transfer, transmit and inherit real property, or any interest therein, in this state, and have in whole or in part the beneficial use thereof, in the same manner and to the same extent as citizens of the United States, except as otherwise provided by the laws of this state. All aliens other than those mentioned . . . may acquire . . . real property . . . in this state . . . in the manner and to the extent, and for the purposes prescribed by any treaty now existing between the government of the

360

United States and the nation or country of which such alien is a citizen or subject, and not otherwise.''

Section 1 of article I of the Constitution of 1849 declared that included in the inalienable rights of all men was the right of ''acquiring, possessing and protecting property.'' Section 17 of the same article provided: ''Foreigners who are, or who may hereafter become, bona fide residents of this state, shall enjoy the same rights in respect to the possession, enjoyment, and inheritance of property, as native born citizens.'' Pursuant to this provision the Legislature in 1872 enacted section 671 of the Civil Code, which provides that ''Any person, whether citizen or alien, may take, hold, and dispose of property, real or personal, within this state.''

Section 17 of article I of the Constitution of 1879 provides that ''Foreigners of the white race or of African descent, eligible to become citizens of the United States under the naturalization laws thereof, while bona fide residents of this state, shall have the same rights in respect to the acquisition, possession, enjoyment, transmission, and inheritance of property as native-born citizens.'' This section was amended in 1894 but in no way affecting the problem here involved.

By an act of 1913 (Stats. 1913, p. 206, Deering's Gen. Laws, Act 260) the Legislature provided, among other things, that aliens eligible to citizenship under the laws of the United States may acquire, possess, enjoy, transmit and inherit real property, or any interest therein, in this state, in the same manner and to the same extent as citizens of the United States, except as otherwise provided by the laws of this state.

In 1920, through the medium of the initiative, the Alien Land Act was adopted and it has since been the law of California. By a long line of decisions in this state it has been held that it is within the power of the Legislature (in the absence of a treaty to the contrary and there is here none) to forbid the taking and holding of real property by aliens ineligible to citizenship. (See *People* v. *Osaki* (1930), 209 Cal. 169 [286 P. 1025]; *Mott* v. *Cline* (1927), 200 Cal. 434 [253 P. 718]; *Porterfield* v. *Webb* (1924), 195 Cal. 71 [231 P. 554]; *In re Okahara* (1923), 191 Cal. 353 [216 P. 614]; *In re Akado* (1922), 188 Cal. 739 [207 P. 245]; *People* v. *Cockrill* (1923), 62 Cal.App. 22 [216 P. 78].) And the Act of 1920 has been upheld by the Supreme Court of the United States. (See *Terrace* v. *Thompson* (1923), 263 U.S. 197 [44 S.Ct. 15,

68 L.Ed. 255]; *Porterfield* v. *Webb* (1923), 263 U.S. 225 [44 S.Ct. 21, 68 L.Ed. 278]; *Webb* v. *O'Brien* (1923), 263 U.S. 313 [44 S.Ct. 112, 68 L.Ed. 318]; *Cockrill* v. *People* (1925), 268 U.S. 258 [45 S.Ct. 290, 69 L.Ed. 944].)

Under the laws of this state and of the United States the plaintiff is entitled to acquire and possess real property unless he is an alien, and is ineligible to citizenship. The two factors must concur. In other words, he must not only be an alien but he must also be ineligible to citizenship in order that he be excluded from the right to acquire and hold property in this state.

Considering the factors in the reverse order the law is plain that the plaintiff is not eligible to become a citizen of the United States. The Nationality Code of 1940 (effective ninety days after October 14, 1940, 54 Stats. 1137-1174; 8 U.S.C.A. §§ 501-907) provides in section 703 that "The right to become a naturalized citizen under the provisions of this chapter shall extend only to white persons, persons of African nativity or descent, and descendants of races indigenous to the Western Hemisphere; Provided, That nothing in this section shall prevent the naturalization of native-born Filipinos having the honorable service in the United States Army, Navy, Marine Corps, or Coast Guard as specified in section 724. . . ." Plaintiff, as already stated, has never served in any of the armed forces of this country and he does not come within any of the other classes mentioned in the foregoing section of the Nationality Code eligible to naturalization.

It is likewise clear that the plaintiff is not an alien. In the early case of *Lyons* v. *State of California,* 67 Cal. 380, at page 382 [7 P. 763], this court said: "According to Webster the word 'alien' means 'a foreigner, one born in or belonging to another country. . . . In American law, one born out of the jurisdiction of the United States and not naturalized. . . .''

In *Toyota* v. *United States* (1925), 268 U.S. 402, 411 [45 S.Ct. 563, 69 L.Ed. 1016], in reviewing the naturalization statutes, the court said: "The citizens of the Philippine Islands are not aliens. See *Gonzales* v. *Williams,* 192 U.S. 1, 13 [24 S.Ct. 171, 48 L.Ed. 317]. They owe no allegiance to any foreign government. They were not eligible for naturalization under § 2169 because not aliens, and so not within its terms.'' Similar expressions are found in *Gonzales* v. *Williams* (1904), 192 U.S. 1, 13 [24 S.Ct. 171, 48 L.Ed. 317], and *Roque Espi-*

*ritu De La Ysla* v. *United States* (1935), 77 F.2d 988, and *In re Rena* (1931), 50 F.2d 606.

In *DeCano* v. *State* (1941), 7 Wn.2d 613 [110 P.2d 627], the court had under consideration an amendment to a law prohibiting the ownership of real property by aliens. The amendment, adopted in 1937, was entitled "An Act relating to the rights and disabilities of aliens with respect to land, and amending . . . Laws of 1921 . . .," but it added to the definition of "alien" in the earlier act, the clause: ". . . and [alien] does include all persons who are non-citizens of the United States and who ineligible to citizenship by naturalization. . . ." In reviewing the application of the amendatory statute to the situation of a Filipino who was a noncitizen ineligible to citizenship, the court held that the amendatory statute was unconstitutional because its title, which referred to "aliens," was not sufficiently broad to warrant inclusion of noncitizens such as native Filipinos. The court said at page 633 [110 P.2d]:

" 'Alien' is commonly understood and has been judicially defined to be a person who owes allegiance to a foreign government. *Ex parte Fung Sing*, D.C., 6 F.2d 670. The 1937 law, as we have pointed out, applies to native Filipinos, although it is well known that, since the Spanish-American War, they have owed allegiance only to the United States. Regardless of whatever uncertainty may have existed as to their precise status, whether quasi-citizen or American nationals, the United States Supreme Court, in effect, held, as early as 1904, in the case on *Gonzales* v. *Williams*, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317, *that they are not aliens*. In that case, it was decided that citizens of Porto Rico (whose status, with reference to United States nationality, is substantially identical with that of citizens of the Philippine Islands) were not aliens within the meaning of the Federal immigration laws. In *Toyota* v. *United States*, 268 U.S. 402, 45 S.Ct. 563, 565, 69 L.Ed. 1016, *supra,* decided in 1925, the same Court said: 'The citizens of the Philippine Islands are not aliens. See *Gonzales* v. *Williams*, 192 U.S. 1, 13, 24 S.Ct. 177, 48 L.Ed. 317.' In 1935, the United States Circuit Court of Appeals for the Ninth Circuit squarely held, in *Roque Espiritu De La Ysla* v. *United States*, 77 F.2d 988, 989, *supra,* that citizens of the Philippine Islands of the Filipino race are not aliens because, in the language of the opinion: 'They owe no allegi-

ance to any foreign government, but do owe allegiance to the United States.' "

 Since it must be concluded that the plaintiff is not eligible to citizenship but is not an alien the discussion might well end here. But as the question of plaintiff's status in his personal relationship to our government is discussed by the parties, it may well be deemed to be in the case, and should be resolved by classifying the plaintiff as a national.

Prior to the adoption of the Nationality Code of 1940 there was much confusion surrounding the identification of persons included in the term "non-citizen nationals." (See McGovney, Cases on Constitutional Law, 2d ed (1934), p. 440; 22 Cal.L.Rev. (1934) p. 593; 11 Columb.L.Rev. (1911) pp. 231, 326.) The adoption of that code, in the light of court decisions, disposed of many old problems. For example, section 703, providing for the naturalization of Filipinos who have served in the armed forces; section 602, clarifying the status of Puerto Ricans and giving citizenship to all born after April 11, 1899; section 603, according citizenship to all born in the Canal Zone or Republic of Panama after February 26, 1904; section 601, covering all classes of nationals and citizens; and section 604, covering all classes born nationals but not citizens.

Section 604 of the Nationality Code, covering "Persons born nationals but not citizens," provides: "Unless otherwise provided in section 601 [and that section does not, so far as this case is concerned], the following shall be 'nationals, but not citizens, of the United States at birth':

"(a) A person born in an outlying possession of the United States of parents one of whom is a national, but not a citizen, of the United States."

 Section 501 contains general definitions for the purposes of the code.

Section 501(e) defines "outlying possessions" to mean all territory, other than specified areas, "over which the United States exercises rights of sovereignty." The United States is now exercising and, since April 11, 1899, has exercised sovereignty over the Philippine Islands.

Subdivision (b) (2) of that section defines a "national of the United States" to be "a person who, though not a citizen of the United States, owes permanent allegiance to the United States. It does not include an alien." In view of this

definition the term "alien" as used in our Alien Land Law cannot be broadened to include every class of noncitizen, whether alien or national.

The Act of Congress of March 24, 1934 (chap. 84, Public Acts of the 73d Congress, Sess. II, 48 Stat. 456; 48 U.S.C.A. § 1232), provided for adoption by the Commonwealth of the Philippine Islands of a constitution specifically declaring (§ 2a) that "All citizens of the Philippine Islands shall owe allegiance to the United States. Every officer of the government of the Commonwealth of the Philippine Islands shall, before entering upon the discharge of his duties, take and subscribe an oath of office, declaring, among other things, that he recognizes and accepts the supreme authority of and will maintain true faith and allegiance to the United States." The present Constitution of the Islands (Constitution of the Philippines, § 1, subd. 1), was adopted pursuant to this act and provides that until complete withdrawal of the sovereignty of the United States "all citizens of the Philippine Islands shall owe allegiance to the United States." Assuming that the Act of Congress, *supra,* contemplates the complete withdrawal of sovereignty of the United States on July 4, 1946, the happening of that event should not affect the present rights of the plaintiff and bring him at this time within the prohibitory provisions of the Alien Land Act. The plaintiff was at birth in 1899 a national of the United States as defined by the provisions of section 604(a) and that is his present status.

The trial court was therefore right in concluding that the plaintiff is a national, is not an alien as contemplated by our Alien Land Law, and is therefore not prohibited by that law from acquiring and possessing land in this state.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J., and EDMONDS, J., Concurring.—As pointed out by Mr. Justice Shenk in his opinion it is wholly unnecessary to the conclusion reached to determine whether plaintiff is a national of the United States. It is sufficient that he is not an alien. Upon that ground only we concur in the judgment.