245 P.2d 1062]

[L. A. No. 21479. In Bank. July 9, 1952.]

HARUYE MASAOKA et al., Respondents, v. THE PEOPLE, Appellant.

Fred N. Howser and Edmund G. Brown, Attorneys General, Everett W. Mattoon, Assistant Attorney General, and John F. Hassler, Jr., Deputy Attorney General, for Appellant.

James C. Purcell, William E. Ferriter, Guy C. Calden, Saburo Kido, A. L. Wirin and Loren Miller for Respondents.

THE COURT.—Five brothers, American citizens of Japanese ancestry, agreed among themselves to build a home for their widowed mother, a Japanese alien ineligible to citizenship, who had no property or income other than a small pension. One brother and his wife purchased a residential lot in Pasadena and executed a deed giving the mother a life estate in the property with remainder to the five brothers. The mother, together with her sons and daughter-in-law, then brought this action to determine whether the property had escheated to the state by operation of the Alien Land Law. (I Deering's Gen. Laws, Act 261.) The trial court quieted title in the mother and sons, holding that the Alien Land Law is unconstitutional because it violates the Fourteenth Amendment to the federal Constitution.

Our decision in *Sei Fujii* v. *State of California,* 38 Cal.2d 718 [242 P.2d 617], is controlling and for the reasons there stated the judgment must be affirmed.

Judgment affirmed.

SCHAUER, J.—I dissent.

At the time the judgment in this case was rendered in the court below it was indisputably contrary to the law of this

state. That law was enacted by the people by initiative (1 Deering's Gen. Laws, Act 261) and was sustained by the judgments of this court (*In re Y. Akado* (1922), 188 Cal. 739 [207 P. 245] ; *In re Okahara* (1923), 191 Cal. 353, 357 [216 P. 614] ; *Porterfield* v. *Webb* (1924), 195 Cal. 71, 77 [231 P. 554] ; *Mott* v. *Cline* (1927), 200 Cal. 434 [253 P. 718] ; *People* v. *Oyama* (1946), 29 Cal.2d 164 [173 P.2d 794] ; *Palermo* v. *Stockton Theatres, Inc.* (1948), 32 Cal.2d 53 [195 P.2d 1] ) and of the Supreme Court of the United States (*Terrace* v. *Thompson* (1923), 263 U.S. 197 [44 S.Ct. 15, 68 L.Ed. 255] [Washington statute] ; *Porterfield* v. *Webb* (1923), 263 U.S. 225 [44 S.Ct. 21, 68 L.Ed. 278] [California statute] ; see, also, *Webb* v. *O'Brien* (1923), 263 U.S. 313 [44 S.Ct. 112, 68 L.Ed. 318] ; *Frick* v. *Webb* (1923), 263 U.S. 326 [44 S.Ct. 115, 68 L.Ed. 323], and *Oyama* v. *State of California* (1948), 332 U.S. 633 [68 S.Ct. 269, 92 L.Ed. 249] ). Since the judgment in the court below, this court in a four to three decision, in *Sei Fujii* v. *State of California* (1952), 38 Cal.2d 718 [242 P.2d 617] has undertaken to hold, in contravention of its own earlier decisions and of the decisions of the Supreme Court of the United States, that the statute is (and, if the holding is sound, since its enactment 32 years ago has been) invalid.

In the absence of federal limitations this court has authority to overrule its own earlier decisions and to strike down acts of the Legislature as well as initiative measures. All that appears from its practice to be necessary is that four or more justices agree that the end seems desirable. (See e.g., *Perez* v. *Sharpe* (1948), 32 Cal.2d 711 [198 P.2d 17] ; *Sei Fujii* v. *State of California* (1952), *supra*, 38 Cal.2d 718.) But the absoluteness of this power ends when it is sought to be exercised in a case and on a ground which brings it into collision with the federal Constitution. In that circumstance it was formerly held by this court that "the decision of [the Supreme Court of the United States] . . . is absolutely binding upon this tribunal" and that "Whether or not the facts in the case . . . are such as to call for a modification of the views expressed in [the earlier federal decision] . . . is a question which can only be decided by the federal courts." (*In re Letcher* (1904), 145 Cal. 563, 564 [79 P. 65].) This principle which the majority here (as they did likewise in Fujii) refuse to follow, is nevertheless one which they have not the power to effectively overrule. The Supreme Court of the United States speaking of the duty of state tribunals in a similar situation said: "But the vice of this position is that, in following its own prior decision [whether

*following* or *overruling* is immaterial; it is *contrariety* of ruling which is important], the court ignored the decision of this court to the contrary. This lawfully it could not do; the question . . . being a federal question to be determined by the application of federal law. The determination by this court of that question is binding upon the state courts, and must be followed, any state law, decision, or rule to the contrary notwithstanding." (*Chesapeake & O. Ry. Co.* v. *Martin* (1931), 283 U.S. 209 [51 S.Ct. 453, 458, 75 L.Ed. 983].)

In 21 Corpus Juris Secundum at pages 366, 367, the same principle is expressed in these words: "So the decisions of the federal court are binding as to the construction of the federal constitution, and are also binding as to the validity vel non of state statutes assailed as being in conflict with the federal constitution."

Again, in 11 American Jurisprudence at pages 740, 741, it is stated thus: (§ 104) "It is a fundamental principle of the constitutional system of government of the United States that the decisions of the Federal Supreme Court are final and authoritative declarations as to the proper and correct construction to be placed on the Constitution and laws of the United States, and as to whether a state law contravenes any provisions of the Federal Constitution. On this principle, the construction given by that court to the Constitution and laws of the United States is received by all as the true construction. Whenever the Supreme Court of the United States declares that state legislation is in conflict with the Federal Constitution, the judicial tribunals of such state are bound to accept and conform to such decision.

"If necessary, state tribunals will overrule or modify their prior decisions in order to conform with the announcements of the Supreme Court of the United States in reference to constitutional questions. Similarly, where a state court has held a state statute to be unconstitutional because in supposed conflict with the Constitution of the United States, and the Supreme Court of the United States has so interpreted the Federal Constitution that the supposed conflict is found not to exist, it is customary and proper for the state court to change its rulings so as to sustain such statutes. Hence, if after a state court of last resort has decided that a statute of the state is invalid because it contravenes the Federal Constitution, the Supreme Court of the United States determines that a statute of another state which is substantially similar in all respects does not violate the Constitution of the United States, the state court will overrule its former holding of

invalidity in a subsequent· case and follow the decision of the Supreme Court of the United States.'' See also *The State* v. *Steamship Constitution* (1872), 42 Cal. 578, 590 [10 Am.Rep. 303] ; *Tuttle* v. *Block* (1894), 104 Cal. 443, 449 [38 P. 109] ; *Foley* v. *Foley* (1898), 120 Cal. 33, 42 [52 P. 122, 65 Am.St. Rep. 147] ; *In re Letcher* (1904), *supra*, 145 Cal. 563, 564; *Laurel Hill Cemetery* v. *City and County of San Francisco* (1907), 152 Cal. 464, 477 [93 P. 70, 14 Ann.Cas. 1080, 27 L.R.A. N.S. 260] ; *Moon* v. *Martin* (1921), 185 Cal. 361, 366 [197 P. 77] ; *Miller & Lux* v. *Board of Supervisors* (1922), 189 Cal. 254, 266 [208 P. 304] ; *In re Smith* (1924), 193 Cal. 337, 340 [223 P. 971] ; *Elmendorf* v. *Taylor* (1825), 10 Wheat. (U.S.) 152 [6 L.Ed. 289, 292] ; *Cook* v. *Moffat* (1847), 5 How. (U.S.) 295 [12 L.Ed. 159, 165] ; *United States* v. *Reynolds* (1914), 235 U.S. 133 [35 S.Ct. 86, 90,·59 L.Ed. 162] ; *State of South Carolina* v. *Bailey* (1932), 289 U.S. 412 [53 S.Ct. 667, 670, 77 L.Ed. 1292] ; *Pennekamp* v. *Florida* (1945), 328 U.S. 331, 335 [66 S.Ct. 1029, 90 L.Ed. 1295].

That the question as to the validity of California's statute might never have been entertained by the high federal court if the California Supreme Court had in the first instance and consistently thereafter ruled that the law was void, and that if the question had reached it, the federal tribunal might then have followed the lead of California in the direction of invalidation, is quite immaterial. The fact is that California did not hold the statute unconstitutional and that the question did reach, and was determined by the Supreme Court of the United States. Since we ruled on the subject originally and the federal court considered and sustained our views, we are not at liberty to perform a flip and expect the high tribunal to match us with a flop.

The conflict of authority between the United States Supreme Court and this court, which the Fujii decision creates, places the law enforcement officers of California in a somewhat anomalous and difficult position. Ordinarily California law enforcement officers may and should look to the Supreme Court of this state for guidance as to the interpretation and validity of state laws. But when there is a conflict between the holding of the Supreme Court of the United States and the holding of the state court as to the validity of a state law in respect to a federal constitutional issue the ruling of the United States Supreme Court must prevail.

Whatever are the personal views of the justices of this court who joined in the Fujii decision and who join as the majority here, the fact remains that the statute as enacted

still is valid according to published decisions of the Supreme Court of the United States. Since the majority here assert a federal ground for their holding, and since the highest federal court on the precise point here involved has held contrary to the views the majority now assert, and up to this time the federal court has staunchly refused to overrule or disavow the sound constitutional principles upon which its decisions, like the earlier decisions of this court, rest, it seems obvious that under constitutional precepts the law of California on this point is controlled, and is as enunciated, by the United States Supreme Court. Until the high federal tribunal has reversed itself it still remains my duty as a justice of this court, as it likewise remains the duty of all affected law enforcement officers of this state, to uphold and enforce the law as enacted.

And it well may be called to the attention of those who would break down these principles in order to favor a minority group in a particular case that such groups are the last ones who in wisdom should seek such an end. Their safety, their only ultimate protection, depends upon staunch enforcement of the constitutional processes and guarantees. As I pointed out in my dissent in the Fujii case (38 Cal.2d 718, 754) "whether this law [the alien land act] should be modified or repealed or continued in force is not . . . a proper subject for our debate or ruling. The people enacted it and . . . the only classification it makes is created by an act of the Congress of the United States. By constitutional processes the people, if they will, can amend or repeal it or the Congress can abolish the classification. But until and unless the people or the Congress act by the constitutional process, the law should not unnecessarily be stricken down by judicial intervention." The constitutionally prohibited invasion and seizing of a function of the legislative process by either the judicial or the executive department of government is anarchical in character and of ominous import.

Under the accepted concept of government in the United States of America as I understand it, no end, however humanitarian it may appear, justifies judges in refusing to uphold a valid law. Other law enforcement officers may at less peril to our government (albeit at their own substantial risk) refuse to perform their duty but when judges refuse to enforce constitutional processes and instead impose their personal views as to what they would like the law to be, we cease to have a government of laws and have instead a gov-

ernment by whimsy of man. We are fighting governments of that type now. I would not debase our own to that level.

For adequate discussion and documentation of the constitutional principles upon which I stand reference is made to my dissenting opinion in *Fujii* v. *State of California* (1952), *supra*, 38 Cal.2d 718, 753 et seq.

In conformity with constitutional government, the judgment should be reversed.

Shenk, J., and Spence, J., concurred.