[Crim. No. 2713. In Bank.—December 9, 1924.]

In the Matter of the Application of S. NOSE for a Writ of Habeas Corpus.

[1] ALIEN LAND LAW—CROPPING CONTRACT—WHEN INVALID.—A contract between the lessee of agricultural land and an alien ineligible to citizenship, which specifically limits the days and hours of labor, fixes a monthly wage of a certain amount, and provides that "as an incentive to the said employee (ineligible alien) to be industrious and efficient, and as an additional wage," the first party is to pay the alien a sum equal to a certain percentage of the net profits of the crops to be grown and harvested on the premises by the alien, and the contract further providing that in the event the employee (alien) is discharged for cause, or shall abandon the contract, the employer shall be relieved from all liability for said additional wage, is a contract which, if valid, would confer upon the alien the use and benefits arising from the control, occupancy, and enjoyment of real property, which is denied to an ineligible alien by the Alien Land Law of this state.

[2] ID.—AMENDMENTS OF 1923 TO ACT—VALIDITY OF.—The contention that the amendments to the original initiative Alien Land Law by the legislature of 1923 (Stats. 1923, p. 1020) are invalid for the reason that said amendments are not "in furtherance of its purpose" and do not "facilitate its operation," but are, in fact,

---

1. Prohibiting or restricting employment of aliens, note, **L. R. A.** 1916D, 569. See, also, Cal. Jur. Supp. 42–44.

2. See 25 **R. C. L.** 868, 870.

extensions or additions to the inhibitory provisions of the original act, cannot be maintained.

[3] ID.—CROPPING CONTRACT—POWER OF LEGISLATURE.—It was competent for the legislature by the amendment of 1923 (Stats. 1923, p. 1020) to amend section 8 of the Alien Land Law to include within its inhibitions "cropping contracts."

[4] ID.—AMENDMENTS TO ACT—FURTHERANCE OF PURPOSE—POWER OF LEGISLATURE.—As the privileges of making and carrying out a "cropping contract," or to have the right of the possession, enjoyment, and benefits of lands for agricultural purposes, is not given to Japanese subject by treaty or otherwise, and the original Alien Land Act denies the privilege because not given, it follows that the amendments of 1923 to said act are in furtherance of the purpose of the act and it was competent for the legislature to amend the act in conformity with the authority therein given.

(1) 2 C. J., p. 1050, sec. 110.    (2) 36 Cyc., p. 1057.    (3) 2 C. J., p. 1050, sec. 110.    (4) 2 C. J., p. 1050, sec. 110.

APPLICATION for a Writ of Habeas Corpus to discharge from custody the petitioner charged with violation of the Alien Land Law.    Writ denied.

The facts are stated in the opinion of the court.

Hickcox, Crenshaw & Trude and J. Marion Wright for Petitioner.

U. S. Webb, Attorney-General, Frank English, Deputy Attorney-General, Asa Keyes, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

Albert H. Elliott, *Amicus Curiae.*

SEAWELL, J.—Petitioner, a native and subject of Japan and admittedly ineligible to citizenship in the United States of America, is restrained of his liberty by the constable of Los Angeles township, county of Los Angeles, on a warrant issued upon a complaint charging him with a criminal violation of the initiative Alien Land Law adopted by the

4. When change in statute to be regarded as creating new statute instead of mere amendment, note, **Ann. Cas.** 1914D, 1171. See, also, **25 R. C. L.** 870.

electors of this state November 2, 1920 (Stats. 1921, p. lxxxiii.) He claims that his detention is illegal.

[1] Specifically the complaint charges that petitioner unlawfully entered into a conspiracy with one Bischof to execute a contract the purpose of which was to give to petitioner the right to possess, use, cultivate, occupy, and have the beneficial use of a body of agricultural lands containing about eight acres situate in the county of Los Angeles, this state, of which Bischof is lessee and Manuella E. Letton is the owner. The contract upon which the charge of conspiracy is based does not differ in material respects from the contract in the case of *Jones et al.* v. *Webb et al., ante,* p. 88 [231 Pac. 560]. It specifically limits the days and hours of labor and fixes a monthly wage of a hundred dollars, and *ex industria* provides that "as an incentive to the said employee (ineligible alien) to be industrious and efficient, and as an additional wage," Bischof is to pay the alien a sum equal to fifty per cent of the net profits of the crops to be grown and harvested on the premises by the alien. The contract closes with the following paragraph: "It is further provided that in the event the employee (alien) is discharged for cause, or shall abandon this contract, the employer shall be relieved from all liability for said additional wage." The last paragraph is merely one providing for a breach of contract, and in no way changes the true character of the instrument. The contract is one which, if valid, would confer upon the alien the use and benefits arising from the control, occupancy, and enjoyment of real property, which is denied to an ineligible alien by the Alien Land Law of the state.

[2] Certain amendments were made to the original initiative Alien Land Law by the legislature (Stats. 1923, p. 1020), which, petitioner insists, the legislature had no power to enact for the reason that said amendments are not "in furtherance of its purpose" and do not "facilitate its operation," but are, in fact, extensions or additions to the inhibitory provisions of the original act. These amendments consist of the insertion of specific words and terms which in nowise enlarge upon the intent of the act but are in furtherance of its purpose and do in fact facilitate its operation. Section 2 of the original act as amended furnishes a fair example of

the extent and character of the amendments. We have emphasized the amendatory language of that section by the use of italics and reproduce it as thus amended:

"All aliens other than those mentioned in section one of this act may acquire, possess, enjoy, *use, cultivate, occupy* and transfer real property, or any interest therein, in this state, *and have in whole or in part the beneficial use thereof,* in the manner and to the extent and for the purposes prescribed by any treaty now existing between the government of the United States and the nation or country of which such alien is a citizen or subject, and not otherwise."

[3] Criticism is especially directed at the amendment to section 8. Before amendment it read: "Sec. 8. Any leasehold or other interest in real property less than the fee, hereafter acquired in violation of the provisions of this act by any alien mentioned in Section 2 of this act, . . . shall escheat to the State of California." Following the word "fee" the legislature added a cropping contract clause, to wit, "including cropping contracts which are hereby declared to constitute an interest in real property less than the fee." It was competent for the legislature to include within the inhibitions "cropping contracts." It is not necessary to decide whether or not the legislature had the authority to provide that a "cropping contract" in this class of cases shall impress lands affected thereby with an interest therein in favor of the cropper. For the purposes of this decision the effect of the contract upon real property may be regarded as surplusage.

Section 10 has been so amended as to make its penal provisions clearly applicable to each section of the act in case of a violation thereof. Other amendments were made to the act, but they do not affect the questions raised here.

[4] We conclude that if the privileges of making and carrying out the proposed contract, or to have the right of the possession, enjoyment, and benefits of lands for agricultural purposes is not given to Japanese subjects by treaty or otherwise, and the original Alien Land Act denies the privilege because not given, as held in *Porterfield et al.* v. *Webb et al.*, 263 U. S. 225 [68 L. Ed. 278, 44 Sup. Ct. Rep. 21], and which doctrine we here affirm, then it must follow that the amendments are in furtherance of the purpose of the act as construed by this court in *Porterfield* v. *Webb*

*et al., ante,* p. 71 [231 Pac. 554], and it was competent for the legislature to amend the act in conformity with the authority therein given.   (Sec. 13, Initiative Alien Land Act.)

From what is said in this and cited cases it follows that the writ must be dismissed and the petitioner remanded.

It is so ordered.

Myers, C. J., Lennon, J., Shenk, J., Waste, J., Richards, J., and Lawlor, J., concurred.