[L. A. No. 8215.   In Bank.—December 9, 1924.]

## F. S. JONES et al., Appellants, v. U. S. WEBB, as Attorney-General, etc., et al., Respondents.

[1] ALIEN LAND LAW—CROPPING CONTRACT—WHEN VOID.—A contract between a citizen, owner of agricultural land, and a foreigner ineligible to citizenship, denominated a contract of employment, the owner being designated as "employer" and the alien as "employee," under which the alien undertakes, under the direction of the owner, to plant, cultivate, harvest, and pack all crops to be grown upon the land and do all work necessary to be done in the production of crops in a farmerlike manner, to furnish all machinery, horses, tools, and equipment required in the production of and the packing of said crops, the owner agreeing to pay the alien as compensation a certain sum per month, and in addition thereto to give "as a bonus" an additional sum to make the total compensation equal a certain percentage of the net profit realized by the owner from the operation of the land after deducting all cost of planting, cultivation, harvesting, and marketing, the alien being given no right in the land, or crops, and it being agreed that there is no partnership and that the contract shall not be construed as a cropping agreement, is in violation of the Alien Land Law of this state.

[2] ID.—BONUS—DEFINITION.—A bonus is something given in addition to what is ordinarily received by, or strictly due to, the recipient.

[3] ID.—PROVISION FOR BONUS.—The use of the word "bonus" in such a contract does not operate to change the legal effect thereof, or to disguise the real intent of the parties, and the contract contains none of the elements of a bonus.

(1) 2 C. J., p. 1050, sec. 110.   (2) 2 C. J., p. 1050, sec. 110.   (3) 9 C. J., p. 136.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Ralph H. Clock, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Edward W. Tuttle and Charles W. Fourl for Appellants.

U. S. Webb, Attorney-General, Frank English, Deputy Attorney-General, Asa Keyes, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondents.

Albert H. Elliott, *Amicus Curiae.*

1.   See Cal. Jur. Supp. 42–44.

SEAWELL, J.—Appeal from a judgment entered in favor of respondents after demurrer sustained without leave to amend.

Appellant F. S. Jones is a citizen of the United States of America, a resident of and an owner of a parcel of land consisting of ten acres, situate in the county of Los Angeles, this state. Appellant Takeo Makimoto is a native of Japan and ineligible to citizenship in the United States of America. They have prepared a contract for the production of berries, vegetables, and other farm crops, which they desire to and would execute but are deterred from doing so by fear of prosecutions threatened to be instituted against them by the attorney-general of the state and the district attorney of the county of Los Angeles under and by the authority of the forfeiture and escheat provisions of the initiative Alien Land Law of the state (Stats. 1921, p. lxxxiii; Henning's General Laws 1920, p. 59) and the amendment thereto (Stats. 1923, p. 1020), should they do so. The same kind of injunctive relief is sought here as was prayed for in *Porterfield* v. *Webb et al., ante*, p. 71 [231 Pac. 554].

[1] By the language of the proposed contract it is denominated a contract of employment and the land owner is designated ''employer'' and the ineligible alien is designated ''employee.'' The ineligible alien undertakes, under the direction of the land owner, to plant, cultivate, harvest, and pack all crops to be grown upon the lands and do all work necessary to be done in the production of crops in a farmerlike manner. He is to furnish all machinery, horses, tools, and equipment required in the production of and the packing of said crops. The land owner agrees to pay the ineligible alien, as compensation for his services of husbandry, the sum of twenty-five dollars per month on the last day of each and every month. In addition thereto, quoting the language of the contract, said employer promises ''to give, as a bonus, an additional sum to make the total compensation equal to sixty-six and two-thirds per cent of the net profit realized by the employer (land owner) from the operation of said property after deducting all costs and expenses paid by the employer (land owner) in the planting, cultivation, harvesting and marketing of said crops, said net profit to be determined at the end of each year of the continuance of

this agreement.'' It is stipulated that the alien shall have no right, title, or interest of any kind whatsoever in or to the land on which said crops are produced or in the crops grown thereon, and it is agreed that said contract or agreement shall not constitute a partnership of any kind nor shall it be construed to be a cropping agreement or a contract for the working of said lands on shares. The only material difference between the contract in this case and the one this day passed upon in *Porterfield et al.* v. *Webb et al., supra,* is that this case contains a so-called ''bonus clause,'' which, appellants claim in their briefs, distinguishes it from the Porterfield-Mizuno contract and reduces it, in legal effect, from a cropper's contract to a simple contract of employment. The monthly payment provision, standing alone and in no way interrelated or forming a part of any forbidden considerations, would constitute a contract of employment. But this single provision cannot control other provisions of the contract unqualified by it or neutralize the effect of the provision which gives a sixty-six and two-thirds per cent of the net profits realized from the crops gathered to the alien, which, unquestionably, was the real inducement that moved the alien to enter into the contract. The joining or uniting of the two does not absolve the other of its essence. The word ''bonus'' as used in the contract is mere surplusage. [2] A bonus is ''something given in addition to what is ordinarily received by, or strictly due to, the recipient; . . . money, or other valuable, given in addition to an agreed compensation.'' (Webster's New International Dictionary; see, also, 9 C. J., 135, 136.) [3] The provision in the contract for a percentage of the crops raised is not unlike the provisions ordinarily found in croppers' contracts, and the use of the word ''bonus'' therein does not operate to change the legal effect of the contract or to disguise the real intent of the parties. The clause providing for a percentage of the crops is a fixed, unalterable part of the contract. The percentage is definite and is not dependent upon any personal exertion on the part of the ineligible alien. There is no way in which it can be increased or diminished. It remains at sixty-six and two-thirds per cent under any and all circumstances. The contract contains none of the elements of a bonus. It contains nothing of a substantial

character which would differentiate it from the contract in *Porterfield et al.* v. *Webb et al., supra.* There is no merit in the bonus claim or suggestion.

All other points in the case have been sufficiently considered in the case last cited. We make that case, therefore, the ground of our decision in this as to those points.

Judgment affirmed.

Myers, C. J., Lennon, J., Shenk, J., Waste, J., Richards, J., and Lawlor, J., concurred.