### FRICK ET AL. *v.* WEBB, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 111. Argued April 23, 24, 1923.—Decided November 19, 1923.

Section 3 of the California Alien Land Law, permitting aliens ineligible to citizenship to " acquire shares of stock in any . . . corporation that is or may be authorized to acquire, possess, enjoy or convey agricultural land, in the manner and to the extent and for the purposes prescribed by any treaty . . . and not otherwise," renders illegal a contract between a citizen of the State and a Japanese alien for sale by the one to the other of shares in such a corporation, and is consistent with the treaty between the United States and Japan and the due process and equal protection clauses of the Fourteenth Amendment. P. 333. See *Porterfield* v. *Webb,* and *Webb* v. *O'Brien, ante,* pp. 225, 313.

281 Fed. 407, affirmed.

Aᴘᴘᴇᴀʟ from an order of the District Court refusing an interlocutory injunction in a suit to restrain officials of the State of California from enforcing the California Alien Land Law.

*Mr. Louis Marshall* for appellants.

I. Assuming that the ownership of shares of stock in a California corporation having the title to agricultural land constitutes an interest in such land, the California Alien Land Law, which forbids aliens ineligible to citizenship under the laws of the United States to acquire such shares, although the right to do so has been conferred on all other aliens, denies to the former the equal protection of the laws within the meaning of the Fourteenth Amendment.

II. The prohibition of the acquisition by an ineligible alien of shares of stock in a California corporation owning agricultural land, such shares being personal property, while all other aliens are expressly permitted to acquire such shares, denies to the former the equal protection of the laws.

The disability of aliens at common law in respect to ownership of real estate does not extend to personal property. Aliens are capable of acquiring, holding and transmitting it in the like manner as citizens. This includes the right to take and hold personal property by bequest, and the right of an alien testator to pass his personalty by will. *Calvin's Case*, 7 Coke, 17a; *Fourdrin* v. *Gowdey*, 3 Mylne & Keen, 397; 1 Black. Com. 372; 2 Kent Com. 62; *McLearn* v. *Wallace*, 10 Pet. 625; *Beck* v. *McGillis*, 9 Barb. 35; *Meakings* v. *Cromwell*, 5 N. Y. 136; *Cosgrove* v. *Cosgrove*, 69 Conn. 416; *Detwiler* v. *Commonwealth*, 131 Pa. St. 614; *Cleveland, etc. Ry. Co.* v. *Osgood*, 36 Ind. App. 34; *Marx* v. *McGlynn*, 88 N. Y. 357.

It has long been well settled that shares of stock in a corporation are personal property, whether they be declared such by statute, as is sometimes the case, or not, and whether the property of the corporation itself consists of realty, as in the case of mining, land, realty and canal companies, and the like, or of personal property only. Cal. Civ. Code, § 324.

The California courts have held shares of stock to be personalty.

That a sale of shares of stock comes within the terms of the statute of frauds, whether the act refers to "goods, wares and merchandise," or to "personal property," or to "goods or choses in action," is recognized, with practical unanimity, by the American courts.

This case presents an entirely different aspect from the one where the State is seeking to debar aliens from the ownership of real property in accordance with a policy that quite generally prevails and which, if applied equally to all aliens, would not militate against any constitutional prohibition. Even had the California act undertaken to declare a share of stock real estate, that would not have made it so, or have brought it within the reason of the rule which permits a State to inhibit ownership by aliens of real property within its territory.

Such legislation, even if made applicable to all aliens regardless of race, color or nationality, would come within the rule laid down in *Truax* v. *Raich,* 239 U. S. 33; *Ex parte Kotta,* 62 Cal. Dec. 315; *Fraser* v. *McConway & Torley Co.,* 82 Fed. 257; *State* v. *Montgomery,* 94 Me. 192; and *Truax* v. *Corrigan,* 257 U. S. 312; and would sin against the fundamental principle laid down in *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Gulf, Colo. & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150, and the other leading cases in which the equality clause of the Fourteenth Amendment has been interpreted and applied.

The nature of a share of stock as property must be determined by its inherent characteristics and physical qualities, and not by a legislative fiat. In this act we have not, however, a prohibition of all aliens against the acquisition of the ownership of shares of stock in a corporation owning agricultural lands, but such right of ownership is sought to be withheld from aliens ineligible to citizenship solely because of their race, color and nationality.

By the same token, the legislature might make like restrictions with regard to the acquisition of shares of stock in a company authorized to possess lands for other than agricultural, residential and commercial purposes. That would include corporations operating mines, railways, oil properties, quarries and water works, all of which are basically founded on the ownership of land.

III. Under a fair interpretation of that portion of § 3 of the Alien Land Law on which the appellees rely, the proposed sale to and purchase by Satow of shares of stock of the Merced Farm Company is not prohibited.

IV. The act, as applied, is unconstitutional because it deprives the citizen appellant of the right to enter into a contract for the sale of his shares of stock and because it deprives the alien appellant of his liberty by debarring him from entering into a contract for the purchase of corporate shares. *Yick Wo* v. *Hopkins; Truax* v. *Raich; Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 746; *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Smith* v. *Texas,* 233 U. S. 630; and *Coppage* v. *Kansas,* 236 U. S. 1.

V. Section 3 of the act, as interpreted by the State, offends against the treaty between the United States and Japan, which permits the citizens or subjects of the respective parties to have liberty " to carry on trade, wholesale and retail," in the respective territories of the contracting nations, " and generally to do anything incident to or necessary for trade upon the same terms as native citizens or subjects."

To " carry on trade " is to engage in commerce in any or all of its various phases. It is the business of exchanging commodities by buying and selling them for money. Those commodities need not necessarily be merchandise, but, in the colloquial sense of the word, they may be such securities as are " traded in " on the exchanges or in transactions between man and man. *United States* v. *American Tobacco Co.,* 164 Fed. 700; *United*

*States* v. *Douglas,* 190 Fed. 482; *Finnegan* v. *Noerenberg,* 52 Minn. 239; *People* v. *Blake,* 19 Cal. 579; *State* v. *Hunt,* 129 N. C. 686; *May* v. *Sloan,* 101 U. S. 231; *Bank of United States* v. *Norton,* 10 Ky. 422; *Fleckner* v. *United States Bank,* 8 Wheat. 338; *Champion* v. *Ames,* 188 U. S. 321.

*Mr. U. S. Webb,* Attorney General of the State of California, with whom *Mr. Frank English,* Deputy Attorney General, and *Mr. Matthew Brady* were on the brief, for appellees.

I. The ownership of a share of stock in a California agricultural corporation constitutes an interest in agricultural lands, prohibited to ineligible aliens by the Alien Land Act. It was the purpose of those who understood the situation to prohibit the enjoyment or possession of, or dominion over, the agricultural lands of the State by aliens ineligible to citizenship,—in a practical way to prevent ruinous competition by the Oriential farmer against the American farmer. Those who drafted this legislation fully realized that such competition, working through the means of corporate entities, would have the exact practical effect as in the case of the identical individuals competing without having been organized in such corporate entities.

Shares in corporations in California are, of course, personal property, as that expression is commonly used with reference to the usual ownership of such shares. But they represent an interest in the corporation itself; and, if it owns real property, an interest in that to the extent of the shares of stock. The legal title is in the corporation, but as an agency for the real owners,—the stockholders. As such owners these ineligible aliens are subject to the control by the State of their interest in the agricultural lands.

The Japan Treaty might possibly be held to guarantee the right of this ineligible alien to own or inherit shares

in an ordinary commercial corporation engaged in trade or commerce, where no interest in the agricultural lands of California was involved. The courts have held that there is inherent in the States the power so to control their lands. Of what value would this be if the prohibited purpose might be accomplished through the mechanical device of a corporation? See the definitions of " land " in the Washington law involved in *Terrace* v. *Thompson* [*ante,* 197]. If this California corporation were dissolved, under § 400 of the Civil Code, the directors would become trustees, with full powers to sell all the assets. If the best interests of the stockholders required it, the agricultural land could be divided among them. The statute considers the stock as much an interest in land as is a leasehold interest.

Appellants urged before the District Court that § 3 of the act practically denies to ineligible aliens the right to hold any stock in any California corporation, because almost all of such corporations are " authorized to acquire, possess, enjoy or convey agricultural land." We are concerned, however, only with the facts as here presented. This particular corporation owns agricultural lands and no other properties of said corporation are described in the bill of complaint.

II. The treaty does not protect the ineligible alien appellant in acquiring the shares of stock because of their having certain attributes of personal property.

III. The Fourteenth Amendment does not protect either the ineligible alien appellant or the citizen appellant in their dealing with the shares of stock in this case on account of said shares having certain attributes of personal property.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This is a suit brought by the appellants to enjoin the above-named Attorney General and District Attorney

from enforcing the California Alien Land Law,[1] sub-mitted by the initiative and approved by the electors, November 2, 1920, on the grounds that it is in conflict with the due process and equal protection clauses of the Fourteenth Amendment, and with the treaty between the United States and Japan.

Appellants are residents of California. Frick is a citizen of the United States and of California. Satow was born in Japan of Japanese parents and is a subject of the Emperor of Japan. Frick is the owner of 28 shares of the capital stock of the Merced Farm Company, a corporation organized under the laws of California, that owns 2,200 acres of farm land in that State. Frick desires to sell the shares to Satow and Satow desires to buy them. By the complaint, it is alleged in substance that the appellees have threatened to and will enforce the act against appellants if Frick sells such stock to Satow, and will institute proceedings to escheat such shares to the State as provided in the act; that, but for the provisions of the act and such threats, Frick would sell and Satow would buy the stock. And it is averred that the act is so drastic and the penalties attached to its violation are so great that appellees are deterred from carrying out the sale, and that unless the court shall determine its validity in this suit, appellants will be compelled to submit to it whether valid or invalid.

Appellants applied for an interlocutory injunction to restrain appellees during the pendency of the suit from instituting any proceeding to enforce the act against appellants. The application was heard by three judges as provided in § 266 of the Judicial Code. The motion was denied, and the case is here on appeal from that order.

---

[1] The substance of the portions of the act which are material in this case is printed in the margin of *Webb* v. *O'Brien,* decided this day, *ante,* 319.

In *Porterfield* v. *Webb, ante,* 225, and *Webb* v. *O'Brien,* decided this day, *ante,* 313, we held that the act does not conflict with the Fourteenth Amendment or with the treaty between the United States and Japan. In the case first mentioned, we held that the act prohibits the leasing of agricultural land by citizens of the United States to a Japanese alien, and in the latter that it prohibits the making of a cropping contract between a citizen and a Japanese alien.

The treaty does not grant permission to the citizens or subjects of either of the parties in the territories of the other to own, lease, use or have the benefit of lands for agricultural purposes, and, when read in the light of the circumstances and negotiations leading up to its consummation, the language shows that the parties respectively intended to withhold a treaty grant of that privilege. *Terrace* v. *Thompson, ante,* 197; *Same* v. *Same,* 274 Fed. 841, 844, 845. The applicable provision of § 3 of the act is: Hereafter all ineligible aliens " may . . . . acquire shares of stock in any . . . corporation that is or may be authorized to acquire, possess, enjoy or convey agricultural land, in the manner and to the extent and for the purposes prescribed by any treaty . . . . and not otherwise." The provisions of the act were framed and intended for general application and to limit the privileges of all ineligible aliens in respect of agricultural lands to those prescribed by treaty between the United States and the nation or country of which such alien is a citizen or subject. The State has power, and the act evidences its purpose to deny to ineligible aliens permission to own, lease, use or have the benefit of lands within its borders for agricultural purposes. *Webb* v. *O'Brien, supra.* "As the State has the power . . . to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective." *Crane* v. *Campbell,* 245 U. S. 304, 307, and

cases cited; *Hebe Co.* v. *Shaw*, 248 U. S. 297, 303. It may forbid indirect as well as direct ownership and control of agricultural land by ineligible aliens. The right "to carry on trade" given by the treaty does not give the privilege to acquire the stock above described. To read the treaty to permit ineligible aliens to acquire such stock would be inconsistent with the intention and purpose of the parties. We hold that the provision of § 3 above referred to does not conflict with the Fourteenth Amendment or with the treaty.

*The order appealed from is affirmed.*

MR. JUSTICE McREYNOLDS and MR. JUSTICE BRANDEIS think there is no justiciable question involved and that the case should have been dismissed on that ground.

MR. JUSTICE SUTHERLAND took no part in the consideration or decision of this case.