Vivian Ong SZETO

v.

The LOUISIANA STATE BOARD OF
DENTISTRY et al.

Civ. A. No. 80-4740.

United States District Court,
E. D. Louisiana.

Feb. 18, 1981.

Carole B. Shauffer, American Civil Liberties Union of Louisiana, New Orleans, La., for plaintiff Vivian Ong Szeto.

Ronald C. Davis, Asst. Atty. Gen., Kordice Douglas, Staff Atty., New Orleans, La., for defendants Louisiana State Bd. of Dentistry et al.

ROBERT F. COLLINS, District Judge.

This matter came on for hearing on February 11, 1981 on plaintiff's motion for Summary Judgment and for Preliminary Injunctive Relief and defendants' cross motion for Summary Judgment.

WHEREFORE, after careful consideration of the arguments of counsel, the relevant case law, and the factual and legal issues raised in the submitted memoranda, the Court will and hereby does GRANT plaintiff's motion for Summary Judgment. Defendants' cross motion for Summary Judgment is DENIED.

REASONS

Plaintiff, Vivian Ong Szeto, is a resident alien seeking to be licensed to practice dentistry in the State of Louisiana. Dr. Szeto

has met all the requirements for dental licensure in Louisiana except for the requirement that she be a United States citizen.[1] The Louisiana State Board of Dentistry, its agents and employees, who are defendants herein, have refused to issue a license to Dr. Szeto due to a provision of La.R.S. § 37:761 which establishes United States citizenship as a criterion for licensure as follows:

§ 761. The board shall require that every applicant for a dental license shall: (1) Be a citizen of the United States provided that a non-citizen applicant may take an examination for a license, but if successful, the same cannot be legally issued until said applicant achieves citizenship.

Dr. Szeto presently holds the United States immigration status of a resident alien. She is a citizen of the Phillipines and will not be eligible for United States citizenship until 1985.

The parties agree that there are no genuine issues of material fact. The sole legal question presented for the Court's consideration is whether a state may constitutionally prohibit a person who is not a United States citizen from being licensed to practice dentistry. Plaintiff contends that the Louisiana statute is an unconstitutional violation of the Equal Protection and Due Process clauses of the United States Constitution, The Supremacy Clause of the Constitution, and Article I, Sections 2 and 3 of the Louisiana Constitution of 1974. Defendants argue that § 37:761(1) and the citizenship requirement contained therein is constitutional as a valid exercise of the police power of the State of Louisiana.

## BACKGROUND

Since the United States Supreme Court decision in *Bradwell v. State*, 83 U.S. 130, 16 Wall. 130, 139, 21 L.Ed. 442 (1873), the courts have struggled with the question of whether a state may prohibit aliens from earning a living and engaging in the licensed professions. In *Bradwell*, the Court stated that admission to the practice of law did not depend upon obtaining United States citizenship. Although subsequent jurisprudence has reached opposite results on the issue, state regulation of the employment of aliens has been increasingly subjected to constitutional constraints. For example, in *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), the Supreme Court struck down an ordinance which was applied to prevent aliens from operating laundries. Then in *Truax v. Raich*, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915), a law requiring at least 80% of the employees of certain businesses to be citizens was held to be an unconstitutional infringement of an alien's right to work for a living in the common occupations of the community.

There was, however, a period in which the governing doctrine permitted states to exclude aliens from various activities when the restriction pertained to the regulation or distribution of the common property or resources of the state. Thus, state laws prohibiting aliens from owning land, *Frick v. Webb*, 263 U.S. 326, 44 S.Ct. 115, 68 L.Ed. 323 (1923), working on public construction projects, *Crane v. New York*, 239 U.S. 195, 36 S.Ct. 85, 60 L.Ed. 218 (1915), and harvesting wildlife, *Hauenstein v. Lynham*, 100 U.S. 483, 25 L.Ed. 628 (1880), have all been upheld.

During recent years, the Supreme Court has steadily restricted the activities from which states may constitutionally exclude aliens. One of the first indications of this gradual limitation on the states' power appeared in *Torao Takahashi v. Fish & Game Commission*, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948), where the Court invalidated a California statute denying commercial fishing licenses to aliens. The Court held the statute to be an unconstitutional denial of equal protection of the laws, reasoning

---

1. Dr. Szeto completed her dental education at the Indiana University School of Dentistry, a school approved by the Louisiana State Board of Dentistry for purposes of the requirements of La.R.S. § 37:761(2). She has also passed the Board of Dental Examiners examination pursuant to La.R.S. § 37:761(5).

that the state could assert no public interest sufficient to justify a restriction of this sort. In keeping with this trend, the Court invalidated statutes prohibiting aliens from entering a state's classified civil service, *Sugarman v. Dougall*, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973), practicing law, *In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973), working as engineers, *Examining Board of Engineers v. Flores de Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976), and receiving state educational benefits, *Nyquist v. Mauclet*, 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977).

■ Nevertheless, the Court has recognized that in areas of employment closely intertwined with the states' governing activities, non citizens may be constitutionally prohibited from participating in certain specified self-government processes. Thus, in *Foley v. Connelie*, 435 U.S. 291, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978), the Court upheld a New York statute that excluded aliens from employment as policemen. Then in *Ambach v. Norwick*, 441 U.S. 68, 99 S.Ct. 1589, 60 L.Ed.2d 49 (1979), a New York law forbidding aliens from being certified as public schoolteachers was upheld. The Court's rationale for these decisions was stated in *Ambach* as follows:

> "[S]ome state functions are so bound up with the operation of the State as a governmental entity as to permit the exclusion from those functions of all persons who have not become part of the process of self-government.... The rule for governmental functions, which is an exception to the general standard applicable to classifications based on alienage, rests on important principles inherent in the Constitution. The distinction between citizens and aliens, though ordinarily irrelevant to private activity, is fundamental to the definition and government of a State.... It is because of this special significance of citizenship that governmental entities, when exercising the functions of government, have wider lati-

tude in limiting the participation of noncitizens." 99 S.Ct. at 1593–94

Despite the decisions in *Foley* and *Ambach*, the Court has held classifications based on alienage as inherently suspect and has required that such laws be subjected to close judicial scrutiny. *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). Since classifications based on alienage are now suspect, the state must show a compelling state interest in order to justify laws discriminating against non-citizens. As stated in *Griffiths*: "Resident aliens, like citizens, pay taxes, support the economy, serve in the Armed Forces, and contribute in myriad other ways to our society. It is appropriate that a State bear a heavy burden when it deprives them of employment opportunities." 93 S.Ct. at 2855.

Thus the specific issue before the Court is whether the practice of dentistry, which falls into the more general category of the practice of medicine, is a profession so intertwined with Louisiana's governing process that restriction is valid per *Foley*, or whether it is an occupation that may not be constitutionally denied to aliens, per *Graham*. Neither the district nor the state courts have reached consistent results on this issue, although a review of the myriad decisions may prove illuminating.

In *Wong v. Hohnstrom*, 405 F.Supp. 727 (D.Minn.1975), a case closely on point, the Court held that a Minnesota statute requiring citizenship as a prerequisite to registration as a pharmacist was an unconstitutional violation of the equal protection clause of the Fourteenth Amendment. Plaintiff, a resident alien residing in Minnesota, completed the requirements necessary to become a pharmacist. Although she was a registered pharmacist in the States of California and Nevada, the Minnesota State Board of Pharmacy refused to process her application solely on the grounds that she was not a United States citizen as required by a Minnesota law.[2] Quoting from *Griffiths*, the Court stated that it could not

---

**2.** The referred to law is Minn.Stat. § 151.10: "QUALIFICATIONS OF APPLICANTS. To be entitled to examination by the board as a phar-

macist the applicant shall be a citizen of the United States...." 405 F.Supp. at 728.

"perceive any distinction between denying aliens the right to become pharmacists and the right to practice law", and held both denials to be "equally repugnant to the Equal Protection Clause." 405 F.Supp. at 729. Several years later in *Doe v. Plyler*, 628 F.2d 448 (5th Cir. 1980), the Fifth Circuit struck down a Texas statute denying free public education to illegal Mexican aliens as unconstitutional. These decisions provide the framework for an analysis of the issues at hand.

## I. EQUAL PROTECTION CLAIM

The Fourteenth Amendment to the United States Constitution provides that: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." Plaintiff argues that § 37:761(1) is unconstitutional as a violation of this amendment. The Court agrees. As stated by Mr. Justice Hughes in *Truax*:

> "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure. If this could be refused solely upon the ground of race or nationality, the prohibition of the denial to any person of the equal protection of the laws would be a barren form of words." 36 S.Ct. at 10. (Citations omitted.)

Depriving plaintiff of the opportunity to practice dentistry solely on the basis that she is not at present a United States citizen is to deprive her of the right to "work for a living in the common occupations of the community." Defendants argue that the statute is constitutional as a valid exercise of Louisiana's police power. It is true, as defendants contend, that "the police power of the State includes the power to enact comprehensive, detailed and rigid regulations for the practice of medicine, surgery and dentistry." *Garcia v. Texas State Board of Medical Examiners*, 358 F.Supp. 1016 (W.D.Tex.1973). *Garcia* upheld a Texas statute forbidding nonlicensed health care providers from forming nonprofit health care associations. However, *Garcia* is not dispositive of the issues at hand because its facts are distinguishable from those in the case at bar. While it is true that the states do enjoy a power to regulate the medical profession, this observation does not go far enough, since the states' police power *must be exercised in a manner consistent with the United States Constitution.* Thus, any exercise of that police power, to be valid, must not violate the Constitution or any provisions thereof. The general trend in this area makes it abundantly clear that a state law or regulation that denies equal protection of the laws will be invalidated as an unconstitutional exercise of the state's police power. This reasoning supported the holdings in *Sugarman* and *Doe*. Further, as classifications based on alienage are now suspect, the State of Louisiana must demonstrate a compelling state interest to justify exclusions from employment. Defendants have not asserted, nor can the Court conceive, of any compelling reason for excluding Dr. Szeto. It is admitted that she has met all educational and procedural requirements of § 37:761, save the United States citizenship requirement. She was educated in an Indiana school that is approved by the Louisiana State Board of Dentistry and has in fact been licensed to practice dentistry in the State of California. Despite the reservation to the state of the police power, a statute aimed at alienage classification must be subjected to strict judicial scrutiny. *Graham*. The Court finds no compelling reason to justify the prohibition contained in § 37:761(1).

*Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), cited by defendants in their memorandum stands for the proposition that a state has a legitimate interest in maintaining the quality of medical care within its borders. The issue decided in that case involved the constitutionality of a state law regulating the sale or circulation of publications encouraging abortions. This case is not on point, and again it should be noted that in the instant matter, a state's right to regulate is not at issue; rather, the question is whether the state exercises its power to regulate in a

manner that is consistent with the Constitution. For as stated in *Takahashi*, "the power of a state to apply its laws exclusively to its alien inhabitants as a class is confined within narrow limits." 68 S.Ct. at 1143. This reasoning is supported by the holding in *England v. Louisiana State Board of Medical Examiners*, 246 F.Supp. 993 (E.D. La.1965), where the court stated: "[T]he state in undertaking its obligation to protect the public must adopt those means which trench least on fundamental private rights, including the right to practice one's profession." 246 F.Supp. at 997.

Finally, defendants have not asserted the state's purpose in prohibiting a noncitizen from being licensed to practice dentistry. The practice of medicine is not related to a state governmental function, so the compelling state interest in insuring that only United States citizens perform state governmental jobs, which is the rationale that supported the holdings in *Foley* and *Ambach*, is not applicable here. Dr. Szeto's moral character and/or general fitness to practice dentistry have not been challenged, so the interest in assuring her qualifications is not at issue. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). As the state has not met its burden of asserting a constitutionally permissible purpose or interest, a regulation based on the class of alienage is not justified. The Court holds that La.R.S. § 37:761(1) is unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## II. DUE PROCESS CLAIM

■ The antecedent clause to the equal protection provision of the Fourteenth Amendment provides that: "No State shall ... deprive any person of life, liberty, or property, without due process of law...." U.S.Const. amend. XIV. Due process protections are extended to aliens, even if they are in the United States illegally. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953). However, as plaintiff has not asserted specific conduct on the part of the State of Louisiana to support her allegations that the state has denied her due process of the law, the Court declines to decide whether § 37:761(1) violates the due process clause of the Fourteenth Amendment.

## III. THE SUPREMACY CLAUSE

Article VI, clause 2 of the United States Constitution provides: "This Constitution ... shall be the supreme Law of the Land; ..." (The Supremacy Clause). Plaintiff argues that § 37:761(1) violates this mandate by interfering with the immigration and naturalization powers granted to Congress by Article 1, Section 8 of the Constitution. The Court disagrees.

■ The Supremacy Clause requires invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties. Thus, the determination rests on whether the state law impermissibly interferes with federal law and is thus preempted. *De Canas v. Bica*, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). The relevant inquiry here is whether § 37:761(1) regulates a field that Congress alone occupies; such a determination can be reached only if the nature of the regulated subject matter [licensing of persons to practice dentistry in the State of Louisiana] permits no other conclusion or if Congress has unmistakably so ordained. *De Canas*, 96 S.Ct. at 937. The central concern of the Immigration and Nationality Act [INA] 8 U.S.C. § 1101 *et seq.*, enacted pursuant to Congress' power under Art. 1, is with "the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country." *De Canas*, 96 S.Ct. at 938. In *De Canas*, the Court decided that congressional concern over the employment of illegal aliens was at most, peripheral. As there was no clear indication that Congress intended to forbid the state from regulating the employment of aliens once admitted into the United States, the Court found no preemption or violation of The Supremacy Clause.

■ The same reasoning applies here. As stated in *Doe v. Plyer*, 628 F.2d 448 (5th

Cir. 1980), regulation of employment of aliens falls under the traditionally broad police power of the states. 628 F.2d at 452. And, "standing alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration." *De Canas*, 96 S.Ct. at 934. Given that the State of Louisiana does possess the power to regulate the employment of aliens, albeit within constitutional limitations, the Court holds that § 37:761(1) does not impermissibly interfere with or encroach upon federal law in this area and is thus not a violation of The Supremacy Clause of the Constitution.

### IV. LOUISIANA CONSTITUTION OF 1974

In light of the foregoing discussion, and plaintiff's failure to inform the Court of the basis for the claim that § 37:761(1) violates Article I, Sections 2 and 3 of the Louisiana Constitution of 1974, the Court finds it unnecessary and hereby declines to decide this issue.

### CONCLUSION

For the reasons stated herein, the Court hereby ORDERS that plaintiff's motion for summary judgment be granted and that the Clerk enter judgment declaring that La. R.S. § 37:761(1), which requires that a person be a United States citizen to obtain a license to practice dentistry in Louisiana, is unconstitutional and invalid on its face in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.