

# The Attorney General of Texas

December 31, 1984

M MATTOX
ttorney General

ipreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
2/475-2501
ilex 910/874-1367
Telecopier 512/475-0266

4 Jackson, Suite 700
Uallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
5/533-3484

1υυι Texas, Suite 700
ouston, TX. 77002-3111
13/223-5886

)6 Broadway, Suite 312
Jbbock, TX. 79401-3479
806/747-5238

309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
12/225-4191

An Equal Opportunity/
ffirmative Action Employer

Mr. Garry Mauro
Chairman
Texas Veterans Land Board
835 Stephen F. Austin Building
Austin, Texas    78701

Opinion No. JM-289

Re:  Constitutionality of Texas requirement of United States citizenship for eligibility for participation in the Veterans Land and Housing Program

Dear Mr. Mauro:

You inform us that an applicant to purchase land pursuant to the Veterans' Land Program is a citizen of Canada. For purposes of this opinion, we will assume that the applicant remains in the United States lawfully. Both article III, section 49-b of the Texas Constitution and section 161.001(7) of the Natural Resources Code require that veterans who participate in the Veterans' Land Program be citizens of the United States. You ask us the following question:

> In light cf the equal protection clause of the United States Constitution and recent United States Supreme Court holdings in the area of classifications based on alienage, can resident aliens who have served in the United States armed forces and who are otherwise qualified veterans be prevented from participating in the Veterans Land and Housing Programs?

We predict that a court would answer your question in the negative.

Article III, section 49-b of the Texas Constitution provides in pertinent part:

> The lands of the Veterans' Land Fund shall be sold by said Board in such quantities, on such terms, at such prices, at such rates of interest and under such rules and regulations as are now or may hereafter be provided by law to veterans who served not less than ninety (90) continuous days, unless sooner discharged by reason of a service-connected disability, on active duty in the Army, Navy, Air Force, Coast Guard or Marine

> Corps of the United States after September 16, 1940, <u>and who, upon the date of filing his or her application to purchase any such land is a citizen of the United States</u>, is a bona fide resident of the State of Texas, and has not been dishonorably discharged from any branch of the Armed Forces above-named and who at the time of his or her enlistment, induction, commissioning, or drafting was a bona fide resident of the State of Texas, or who has resided in Texas at least five (5) years prior to the date of filing his or her application, and provided that in the event of the death of an eligible Texas Veteran after the veteran has filed with the Board an application and contract of sale to purchase through the Board the tract selected by him or her and before the purchase has been completed, then the surviving spouse may complete the transaction. (Emphasis added).

<u>See also</u> Natural Resources Code §161.001(7) (defining "veteran" to include requirement that applicant be a citizen of the United States); §162.001(8)(C) (defining "veteran" for purposes of the Veterans' Housing Assistance Program to include requirement that applicant be a United States citizen).

The Fourteenth Amendment to the United States Constitution provides in pertinent part that

> [n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; <u>nor deny to any person within its jurisdiction the equal protection of the laws. . . .</u> (Emphasis added).

The Equal Protection Clause does not prohibit all legislative classifications. In reviewing legislation under the Equal Protection Clause, the U.S. Supreme Court's usual approach has been a "two-tiered" standard. If a statute infringes on a fundamental right, see, e.g., <u>Harper v. Virginia State Board of Elections</u>, 383 U.S. 663 (1966) (voting), or creates an inherently suspect classification, <u>see, e.g.</u>, <u>Loving v. Virginia</u>, 388 U.S. 1 (1967) (race), the statute is subject to strict judicial scrutiny which requires the state to establish a compelling interest justifying its enactment. To do so, the state must demonstrate that its purpose or interest is both constitutionally permissible and substantial and that its use of the classification is necessary to accomplish its purpose. <u>See In re Griffiths</u>, 413 U.S. 717 (1973).

If a statute does not affect a fundamental right or create a suspect classification, the statute is accorded a presumption of

constitutionality that is not disturbed unless the enactment rests on grounds wholly irrelevant to the achievement of a legitimate state objective. The latter standard frequently is referred to as the rational basis test. See McGowan v. Maryland, 366 U.S. 420 (1961). A person challenging a classification judged by the rational basis test must establish that the classification does not bear a fair relationship to a legitimate public purpose, whereas a state must justify a suspect classification by showing a compelling state interest. See Plyler v. Doe, 457 U.S. 202, 217 (1982).

As a threshold matter, we note that it has long been held that the guarantees of the Equal Protection Clause of the Fourteenth Amendment extend to all persons regardless of citizenship. Plyler v. Doe, supra. See generally Annot., 47 L.Ed.2d 876 (1976). Earlier United States Supreme Court decisions held that state statutes denying aliens certain rights enjoyed by citizens are not invalid under the Equal Protection Clause of the Fourteenth Amendment as long as there is a "rational basis" for the classification embodied in such statutes. See, e.g., Frick v. Webb, 263 U.S. 326 (1923); Crane v. New York, 239 U.S. 195 (1915); Patsone v. Pennsylvania, 232 U.S. 138 (1914). However, more recent decisions have held that classifications based upon alienage are inherently suspect and subject to "strict judicial scrutiny." See, e.g., Bernal v. Fainter, ___ U.S. ___, 104 S.Ct. 2312 (1984); Examining Board of Engineers, Architects & Surveyors and de Otero, 426 U.S. 572 (1976); In re Griffiths, 413 U.S. 717 (1973); Graham v. Richardson, 403 U.S. 365 (1971).

Statutes containing such classifications will be upheld only if the state imposing them is able to satisfy the burden of demonstrating "that its purpose or interest is both constitutionally permissible and substantial and that its use of the classification is 'necessary . . . to the accomplishment' of its purpose or the safeguarding of its interest." In re Griffiths, supra, at 721-722.

> The underpinnings of the Court's constitutional decisions defining the circumstances under which state and local governments may favor citizens of this country by denying lawfully admitted aliens equal rights and opportunities have been two. The first, based squarely on the concepts embodied in the Equal Protection Clause of the Fourteenth Amendment and in the Due Process Clause of the Fifth Amendment, recognizes that '[a]liens as a class are a prime example of a "discrete and insular" minority . . . for whom . . . heightened judicial solicitude is appropriate.' Graham v. Richardson, 403 U.S., at 372. See also San Antonio School Dist. v. Rodriguez, 411 U.S. 1, 29 (1973); Sugarman v. Dougall, 413 U.S., at 642. The second, grounded in the Supremacy Clause, Const. Art. VI, cl. 2, and in the naturalization

> power, Art. I, §8, cl 4, recognizes the Federal
> Government's primary responsibility in the field
> of immigration and naturalization. <u>See, e.g.,</u>
> <u>Hines v. Davidowitz</u>, 312 U.S. 52, 66 (1941); <u>Truax</u>
> <u>v. Raich</u>, 239 U.S. 33, 42 (1915). <u>See Graham v.</u>
> <u>Richardson</u>, 403 U.S., at 378; <u>Takahashi v. Fish &</u>
> <u>Game Comm'n</u>, 334 U.S. 410 (1948).

<u>Examining Board of Engineers, Architects & Surveyors v. de Otero</u>, 426 U.S. 572, 602 (1976).

Generally, official discrimination against lawfully admitted aliens has taken one of three forms. First, aliens have been prohibited from enjoying public resources or receiving public benefits on the same basis as citizens. <u>See, e.g., Graham v. Richardson, supra; Takahashi v. Fish & Game Commission</u>, 334 U.S. 410 (1948). Second, aliens have been excluded from public employment. <u>See, e.g., Sugarman v. Dougall</u>, 413 U.S. 634 (1973). Third, aliens have been restricted from engaging in private enterprises and occupations in which they could participate if they were citizens. <u>See De Canas v. Bica</u>, 424 U.S. 351 (1976); <u>Examining Board of Engineers, Architects & Surveyors v. de Otero, supra; In re Griffiths, supra</u>. The court has developed an exception to the rule that a class distinction based upon alienage automatically invokes strict scrutiny. This exception has been termed the "political function" exception and applies to laws which exclude aliens from positions very closely associated with the process of democratic self-government. <u>See, e.g., Bernal v. Fainter, supra; Foley v. Connelie</u>, 435 U.S. 291 (1978); <u>Cabell v. Chavez-Salido</u>, 454 U.S. 432 (1982); <u>Ambach v. Norwick</u>, 441 U.S. 68 (1979).

Clearly, the constitutional and statutory provisions involved in this request fall within the first grouping, <u>i.e.</u> statutes which deny to aliens public benefits available to citizens. We think that a court, when presented with this issue, would invoke the "strict scrutiny" standard and strike down that part of article III, section 49-b of the Texas Constitution and sections 161.001(7) and 162.001(8)(C) of the Natural Resources Code which restricts applicants for certain veterans' assistance programs to citizens only. Admittedly, only rarely are statutes sustained when they are subjected to strict scrutiny; as has been noted strict scrutiny may be strict in theory, but in practice it is almost always fatal. <u>See</u> Gunther, <u>The Supreme Court, 1971 Term -- Forward: In Search of Evolving Doctrine on a Changing Court: A Model for Newer Equal Protection</u>, 86 Harv. L. Rev. 1, 8 (1972). Nevertheless, we can discern no compelling state interest in this instance, nor have you suggested one. If there were one, we cannot conclude that such a classification would be necessary for its accomplishment. As the court declared in <u>Graham v. Richardson, supra</u>, at 374, neither a state's desire to preserve limited welfare benefits for its own citizens, nor a state's concern for its fiscal integrity, constitutes a compelling justification for

Mr. Garry Mauro - Page 5   (JM--289)

denying public assistance to resident aliens or restricting benefits
to citizens and longtime resident aliens.

We note that all persons inducted into the armed services,
including resident aliens, are required by 10 U.S.C. §502 (1982) to
take an oath of allegiance to the United States Constitution and to
the President of the United States.  In striking down a Connecticut
regulation limiting the practice of law to citizens only, the court
recited the above-mentioned statutory oath and declared in a footnote:

> If aliens can take this oath when the Nation is
> making use of their services in the national
> defense, residence alien applicants for admission
> to the bar surely cannot be precluded, as a class,
> from taking an oath to support the Constitution on
> the theory that they are unable to take the oath
> in good faith.

In re Griffiths, supra, at 726 n. 18.  Analogously, we conclude that
resident aliens who are veterans of the United States Armed Forces may
not be precluded as a class to entitlement to benefits granted to
veterans who are United States citizens.

Accordingly, we conclude that a court, if presented directly with
the issue, would conclude that those portions of article III, section
49-b of the Texas Constitution and sections 161.001(7) and
162.001(8)(C) of the Natural Resources Code, which restricts
applicants for certain veterans' assistance programs to citizens only,
is violative of the Equal Protection Clause of the Fourteenth
Amendment of the United States Constitution.

### SUMMARY

> Those portions of article III, section 49-b of
> the Texas Constitution and sections 161.001(7) and
> 162.001(8)(C) of the Natural Resources Code, which
> restrict applicants for certain veterans'
> assistance programs to citizens only, is violative
> of the Equal Protection Clause of the Fourteenth
> Amendment of the United States Constitution.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Jim Moellinger
Jennifer Riggs