By the Court:
Before this court is a motion from the Little Tokyo Historical Society and the Japanese American Bar Association seeking admission to the State Bar of California for Sei Fujii, a Californian who died in 1954. Fujii was born in Japan and immigrated to the United States in 1903. Eight years later, he graduated with a law degree from the University of Southern California. The materials before us contain no indication that Fujii took or passed a bar exam or that he applied for admission to the California bar. But such acts by Fujii would have been futile in light of our decision in In re Hong Yen Chang (1890) 84 Cal. 163, 24 P. 156. Federal law at the time limited naturalization solely to " 'free white persons' " and "persons of African descent." (Ozawa v. United States (1922) 260 U.S. 178, 180, 43 S.Ct. 65, 67 L.Ed. 199.) At the same time, California and most other states prohibited foreign-born persons from practicing law unless they were eligible for citizenship. (Raffaelli v. Committee of Bar Examiners (1972) 7 Cal.3d 288, 291, 101 Cal.Rptr. 896, 496 P.2d 1264.) This court upheld that restriction in In re Hong Yen Chang and later suggested that noncitizens were too untrustworthy to practice law. (Large v. The State Bar (1933) 218 Cal. 334, 335, 23 P.2d 288 [" 'it is difficult to conceive how a professional advocate, owing foreign allegiance and cherishing alien prejudices, can usefully vindicate principles in the abhorrence of which he may have been nurtured; how, on many important occasions, the most brilliant forensic talents can be successfully exerted, unless they are sustained and inspired by an ardent patriotism' "].) This pair of interlocking federal and state restrictions-each "the lingering vestige of a xenophobic attitude" (Raffaelli , at p. 291, 101 Cal.Rptr. 896, 496 P.2d 1264 )-combined to form an insurmountable barrier against persons born in Asia who wished to practice law in California. Once federal law changed in 1952 to remove race requirements for naturalization, Fujii became a citizen, at age 73. He died of a heart attack just 51 days later.
Though Fujii both graduated from law school and made his career in California, throughout his entire professional life he was barred from obtaining a license to practice law in the state. This was an injustice that we repudiate today by granting Fujii honorary posthumous membership in the State Bar of California.
Despite his unjust exclusion from the legal profession, Fujii undertook extraordinary efforts to apply his education and talents to advancing the rule of law in California. Fujii partnered with a classmate from his law school to assert the rights of Japanese immigrants in the Los Angeles area. The pair's accomplishments included an early challenge to the Alien Land Law of 1913. That California statute, enacted two years after Fujii finished law school, barred aliens who were "ineligible for citizenship" from owning land in the state. Though the legislation did not single out any particular ethnic group, this court recognized early on that the "object sought to be attained by these statutory provisions" was "to discourage the coming of Japanese into this state." ( *731 Estate of Testubumi Yano (1922) 188 Cal. 645, 658, 206 P. 995 ; see also Scheiber, Constitutional Governance and Judicial Power: The History of the California Supreme Court (2016) p. 183 ["Everyone at the time knew that aliens 'ineligible for citizenship' referred to Asian immigrants."].)
Fujii is well known as the litigant whose case invalidated the Alien Land Law decades later. (See Sei Fujii v. State of California (1952) 38 Cal.2d 718, 725, 738, 242 P.2d 617 (Fujii ).) But long before that landmark ruling, Fujii contributed to other challenges of the same statute that do not bear his name. One of these earlier efforts arose from a 1918 influenza epidemic, during which Japanese doctors were barred from admitting their **489 patients at hospitals. In response, five Japanese physicians formed a corporation to buy land for a new hospital that would serve the Japanese community. The state rejected their corporate filing, This court eventually ordered the state to accept the filing and the United States Supreme Court affirmed our ruling. (See Jordan v. Tashiro (1928) 278 U.S. 123, 49 S.Ct. 47, 73 L.Ed. 214 (Tashiro ).) The ruling came just five years after the high court held in a series of cases that California had broad authority to prohibit aliens from owning or leasing agricultural land. (See Porterfield v. Webb (1923) 263 U.S. 225, 44 S.Ct. 21, 68 L.Ed. 278 ; Frick v. Webb (1923) 263 U.S. 326, 44 S.Ct. 115, 68 L.Ed. 323 ; Webb v. O'Brien (1923) 263 U.S. 313, 44 S.Ct. 112, 68 L.Ed. 318.)
Thirteen years after the Tashiro decision, Japan's military bombed Pearl Harbor. Fujii was among the more than one hundred thousand people of Japanese ancestry-most of them American citizens-who were sent to internment camps solely because of their national origin. Many of these families who were rounded up had been forced to leave behind land in California, and the state began to use the Alien Land Law to take that property. (See Oyama v. California (1948) 332 U.S. 633, 661-662, 662, 68 S.Ct. 269, 92 L.Ed. 249 ["Vigorous enforcement of the Alien Land Law has been but one of the cruel discriminatory actions which have marked this nation's treatment since 1941 of those residents who chanced to be of Japanese origin."].) Indeed, though the Alien Land Law had been on the books since 1913, nearly all of the state's escheat actions against people of Japanese ancestry were instituted after 1942. (See Oyama , pp. 661-662, 68 S.Ct. 269 [noting that "[a]t least 79 escheat actions have been instituted by the state since the [Alien Land Law] became effective" and "[c]uriously enough, 59 of the 73 Japanese cases were begun by the state ... during the period when the hysteria generated by World War II magnified the opportunities for effective anti-Japanese propaganda"].)
Soon after the war ended, Fujii-undaunted-led a new challenge to the Alien Land Law. In 1948, he defied the statute by buying a small undeveloped lot in Los Angeles. (See Scheiber, Constitutional Governance and Judicial Power; The History of the California Supreme Court, supra , at p. 275.) The state began an escheat action to confiscate the land. The case came to this court, and we held that the Alien Land Law violated the Fourteenth Amendment. (See Fujii, supra , 38 Cal.2d at p. 738, 242 P.2d 617.) Even though the statute never named any ethnic group, we held that "the real purpose of the legislation was the elimination of competition by alien Japanese in farming California land" (Id. at p. 735, 242 P.2d 617.) Three justices dissented. Just two months later, Congress passed the Immigration and Nationality Act, also known as the McCarran-Walter Act. This law finally allowed persons of Japanese ancestry to naturalize, thus removing the legal obstacle to their joining the California bar. Fujii became a naturalized *732 citizen over a half-century after his arrival in California and less than two months before his death. Two years later, California voters approved a measure that repealed the Alien Land Law. Fujii did not live to see his fellow Californians vote to undo the xenophobic statute he had spent decades challenging in court.
Despite being formally excluded from joining the ranks of the legal profession throughout his life, Fujii spent much of his career using the courts to advance the rule of law in California, We do not know what more Fujii might have accomplished had he been admitted to the bar, or what others in Fujii's position might have accomplished had our laws not wrongfully excluded or deterred them from becoming lawyers. Such discriminatory exclusion was not only "a blow to [those who] aspired to become a lawyer only to have their dream deferred on account of their race, alienage, or nationality," but also "a loss to our communities and to society as a whole, which denied itself the full talents of its people and the important benefits of a diverse legal profession." (In re Hong Yen Chang (2015) 60 Cal.4th 1169, 1175, 185 Cal.Rptr.3d 1, 344 P.3d 288.) Our Fujii opinion observed that "[t]he only disqualification urged against Sei Fujii is that of race." ( **490 Fujii, supra , 38 Cal.2d at p. 733, 242 P.2d 617.) This statement rings with special relevance as we consider the motion presented on Fujii's behalf. Fujii's work in the face of prejudice and oppression embodies the highest traditions of those who work to make our society more just.
We hereby grant Sei Fujii honorary posthumous membership in the State Bar of California.